12 So.2d 388
## OUTLAW v. STATE.
### 3 Div. 382.

Supreme Court of Alabama.
March 18, 1943.

———◆———

Vincent F. Kilborn, of Mobile, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John W. Lapsley, Asst. Atty. Gen., for appellee.

LIVINGSTON, Justice.

This is an appeal from a final decree of the Circuit Court of Montgomery County, in Equity, determining an assessment against G. C. Outlaw, appellant here, for income taxes for the year 1938.

On March 15, 1939, the appellant taxpayer, G. C. Outlaw, made his income tax return showing a tax liability of $547.65, which was paid by him on that date. Within two years from the time of the filing of the return and the payment of the tax, and as provided by Title 51, § 412, Code of 1940, and on February 11, 1941, the State Department of Revenue mailed to appellant a notice of assessment of additional income taxes in the amount of $222.35 for the year 1938; and set February 27, 1941, as the date for hearing protests. On February 24, 1941, appellant, under the provisions of Title 51, § 413, Code of 1940, signed a written consent waiving the period of limitation upon assessment of income taxes. The waiver extended the time for fixing the assessment to any time on or before June 30, 1941. By subsequent waiver and agreement, the time for fixing the final assessment was extended to any time before June 30, 1942.

The basis of the State's claim to the additional tax of $222.35 was appellant's failure to include in his return of March 15, 1939, dividends totaling $4,447.10 on stock of a foreign corporation receiving less than fifty per cent. of its income from sources within the State.

Pending the final determination of the question of an additional liability of appellant on account of his failure to include the aforesaid dividends in his return made March 15, 1939, appellant found that he had also failed to take into account the total loss of three thousand three hundred and forty-one satsuma orange trees of the claimed value of $5.94 per tree, the same having been killed by freezing weather on or about November 28, 1938. The Department of Revenue allowed appellant a deduction in the amount of $1,169.35 from

154

his gross income for the year 1938 on account of the loss of the satsuma orange trees, valuing the same at thirty-five cents per tree, their original cost; and on October 31, 1941, made a final assessment against appellant in the amount of $711.63. The sum of $547.65 having been paid on March 15, 1939, the Department of Revenue ordered a deficiency assessment of $163.38, and interest at the rate of six per cent. per annum from March 15, 1939, to the date of payment.

Appellant paid the $163.38, with interest, and appealed to the Circuit Court of Montgomery County, in Equity, under the provisions of Title 51, § 140, Code of 1940.

The parties agreed, in pertinent part, as follows:

"Three. That the only question or issue between the parties in this cause with respect to said assessment relates to a deduction in the amount of one thousand one hundred sixty-nine and 35/100 ($1,169.35) dollars allowed by the State Department of Revenue for gross income of appellant for the year 1938 on account of loss of satsuma orange trees claimed by appellant to have been killed by a freeze in November, 1938, the basis of three thousand three hundred forty-one (3341) satsuma orange trees claimed to have been killed by such freeze, the amount of such loss as allowed by the Department being estimated by it at thirty-five cents a tree. The appellant claims that the amount of such loss and consequent deduction from gross income should have been allowed to the extent of five and 94/100 ($5.94) dollars a tree (as stated in objection filed on behalf of appellant under date of October 29, 1941, page 9 of certified transcript of proceedings before the Department).

"Appellant claims such loss as deductible loss under subdivisions (d), (e) or (f) of section 385, Title 51, Code of Alabama 1940, sustained during the taxable year, and not compensated for by insurance or otherwise.

"The amount of adjusted net income shown by the findings of the Department (page 5 of certified transcript of proceedings before the Department) and the exemption and credit for dependents allowed by the Department are admitted, together with the fact that taxpayer is a citizen and resident of Alabama.

"Appellee does not admit either the fact of the loss of the trees, the amount thereof, or the right of appellant to any deduction with respect thereto, but it is agreed that any evidence which is legal and material, whether offered by appellant or appellee, relating to such alleged loss, and any deduction claimed therefor, shall be admissible upon the trial or hearing of this cause; that such evidence may be taken orally before the court and by deposition before a commissioner agreed upon by the parties.

"Four. It is further agreed that upon the determination by the court of the questions relating to such alleged loss and deduction which may be found by the court to be allowable on account thereof the court shall make and enter a decree giving effect to such determination as provided by law.

"Five. It is further agreed that nothing herein shall be construed to affect the right of either party to appeal from the decree which may be rendered by the court in this cause."

From the evidence submitted, the trial court found:

"That in computing the net income for said period, the taxpayer was legally entitled to a deduction for the loss caused by the destruction of the said satsuma orange trees during 1938, same being a loss sustained during that taxable year, not compensated for by insurance or otherwise, incurred in a transaction entered into by him for profit, not connected with his trade or business, as provided by sub-division (e) of section 345.11, General Revenue Act of 1935, General Acts of 1935, page 407 (section 385(e), Title 51, Code of Alabama 1940), not to exceed, however, the cost of bringing such trees to a state of maturity; and the court finds from the evidence that the cost of bringing said satsuma orange trees to a state of maturity was established at $4.75 per tree.

"The court finds, therefore, that the amount of adjusted net income of said taxpayer, of $20,700.01, was subject to a deduction for a loss on account of destruction of said satsuma orange trees in the amount of $15,869.75, which, after allowing the exemptions and credit for the dependents of $3600.00, left remaining the taxable amount of $1230.26. The total amount of tax due was the sum of $21.91.

"It appears to the court, therefore, that the payment of $547.65 made by the taxpayer on March 15, 1939, was excessive in the amount of $525.74, and that the taxpayer was not subject to any deficiency assessment of income tax for 1938. The

said assessment of October 31, 1941, was, therefore, illegally made, and same should be set aside and cancelled. The taxpayer is entitled to an order for the refund of the additional amount of $163.88 and interest thereon of $27.86 paid by him on November 30, 1941, upon said assessment."

It will be observed that the trial court found that the appellant was entitled to recover the amount of $163.38, and interest, paid by him when he appealed to the circuit court the final assessment of the Department of Revenue. The trial court further found that appellant overpaid on March 15, 1939, his income tax liability for the year 1938, the amount of overpayment being the sum of $525.70, but which sum the trial court refused to order repaid to appellant.

The question is, should the trial court have ordered a repayment of the overpayment made on March 15, 1939, in the amount of $525.70?

The State insists that such repayment would be, in effect, a refund of taxes which had been erroneously paid with the filing of the original return, and for which no claim for refund had ever been filed, and more than two years had elapsed from the date of such payment. That the provisions for the refund of excess taxes paid upon an assessment, from which an appeal is taken pursuant to the provisions of section 140, Title 51, Code of 1940, are limited to the amount of the assessment from which the appeal is taken, or the amount paid upon such assessment as a condition to perfecting an appeal from such assessment, plus interest on such amount.

We think the State's position is untenable.

There was no final assessment of appellant's taxes until October 31, 1941. So far as we know, there is no provision in our statutes for making a so-called "deficiency assessment" of income taxes.

Section 412, Title 51, Code of 1940, in pertinent part, provided: "The amount of income taxes imposed by this title shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

Section 407, Title 51, Code of 1940, provides for the assessment of income taxes. It provides that the amount shown to be due by the taxpayer's return shall consti-tute and create a prima facie liability for such amount on which taxes shall be paid as therein provided. Further, "that 'assessment' or 'assessed' herein used shall refer to and mean the final determination of the amount found to be due by the department of revenue." Further, "that where the department of revenue determines that the amount due is different from that shown by the taxpayer's return, notice of such different amounts shall be given to taxpayer by registered mail, return receipt requested, giving the taxpayer notice of the amounts so fixed and the department of revenue shall fix a day, not less than fifteen days from date of such notice, for hearing any protest of taxpayer. The time and place of such hearing shall be designated in such notice. Upon hearing such protest or if the taxpayer fails to appear on the day set, the department of revenue shall finally fix, determine and assess the amount of tax due and notify the taxpayer thereof by registered mail. Within thirty days from the date of mailing the letter advising the taxpayer of such assessment the taxpayer may appeal from such assessments in the same manner as in cases of appeals from assessments made by the department of revenue as provided for in this title." The manner of appeal referred to is provided by section 140, Title 51, Code of 1940.

Section 140, supra, provides that either the State or the taxpayer may appeal from any final assessment made by the Department of Revenue. The manner in which an appeal may be taken is provided, and authorizes an appeal by the taxpayer to the Circuit Court of Montgomery County, in Equity. But the taxpayer must pay the assessment before it becomes delinquent, and if not paid the court shall on motion ex mero motu dismiss the appeal, unless the taxpayer has executed a supersedeas bond. Section 140, supra, further provides that the assessment by the Department of Revenue shall be prima facie correct, and the burden is on the taxpayer to show otherwise. It provides further: "The circuit court in equity, or the supreme court of Alabama on appeal to it may, if it be of the opinion from all the evidence that the assessment as made is either too high or too low, fix the amount of the assessment. The court shall hear such appeals according to its own rules and methods or procedure so far as practicable and shall decide all questions both as to the legality of the assessment and the amount thereof. * * * From the judgment of the circuit court in equity,

either the state or the taxpayer may appeal direct to the supreme court of Alabama, within thirty days from the rendition of the judgment; the taxpayer shall give security for the cost of such appeal to be approved by the register of the circuit court from which the appeal shall be taken. If upon such appeal the assessment made by the department of revenue is reduced, the court upon proof of payment of said tax shall ascertain and recite such fact in the judgment and shall ascertain and determine by its judgment or decree, the amount of tax which was invalid or which was excessive both as to the amount paid to the state, counties, county boards of education, municipalities or other governmental agencies receiving any part of such taxes, and upon presentation of a certified copy of the judgment to the comptroller, it shall be the duty of the comptroller to draw his warrant on the treasurer in favor of such taxpayer for such an amount as the judgment of the court shall ascertain and declare has been erroneously paid to the state, together with interest from date of payment, and such warrant of the comptroller shall be paid out of any funds in the treasury as a current obligation of the year in which said refund is ordered."

The foregoing provisions of the statutory law govern the instant case, and section 410, Title 51, Code of 1940, dealing with "refunds", has no influence here. Nor do the rules enunciated in Curry v. Johnston, 242 Ala. 319, 6 So.2d 397, apply.

No argument is here made in respect to the finding of facts by the trial court.

The final assessment of appellant's income tax due for the year 1938 was made by the Department of Revenue on October 31, 1941. Appeals to the circuit court, in equity, and to this court were perfected in accordance with the provisions of the statute. The entire assessment was before the court for adjudication, and if any part of the assessment is illegal, it must be returned to the taxpayer. Equity and good conscience, and the plain language of the statutes, demand no less.

We hold that appellant's income tax liability for the year 1938 is the sum of $21.91. All sums paid by appellant in excess of that amount, together with interest thereon, in accordance with the provisions of the statute, are ordered repaid to him.

The judgment of the trial court is reversed and the cause remanded, so that a decree may be entered in accordance with this opinion.

Reversed and remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.