## 15733

SOUTHERN WEAVING COMPANY v. QUERY ET AL.

(34 S. E. (2d), 51)

*John M. Daniel,* Attorney General, and *Claude K. Wingate,* Assistant Attorney General, both of Columbia, S. C., Counsel for Appellants,

*Mr. T. Frank Watkins,* of Anderson, S. C., and *Messrs. Haynsworth & Haynsworth,* of Greenville, S. C., Counsel for Respondent,

May 9, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

Southern Weaving Company, respondent, brought this action against the members of the South Carolina Tax Commission, appellants, under Section 2469, Code of 1942, to recover certain income taxes and interest thereon which respondent paid under protest. The case was heard in the Court below upon the pleadings and an agreed stipulation of facts. From a decree awarding judgment in accordance with the prayer of the complaint, appellants have appealed.

Respondent owns and operates a textile manufacturing plant near Greenville, South Carolina. Its fiscal year runs from December 1st to November 30th and its books are kept on the accrual basis. The income tax year in controversy covers the period from December 1, 1942, to November 30, 1943. During this period a large portion or respondent's income was derived from contracts for the sale of its products to the War, Navy and other Departments of the United States Government, or from subcontracts to make or furnish articles required for the performance of

other contracts or subcontracts with such agencies of the Government. All such contracts were subject to renegotiation under an act of Congress passed on April 28, 1942, 56 Stat., 245, 50 U. S. C. A., Appendix § 1191, and the amendments thereto, for the purpose of determining whether the contract prices and the amounts received thereunder were excessive. In determining whether profits are excessive, the Renegotiation Act as amended requires various factors to be taken into consideration, including the efficiency of the contractor, reasonableness of costs and profits, capital employed, extent of risk assumed, nature and extent of contribution to the war effort and character of business. The contractor is required to refund to the United States Government any amount found to be excessive.

The net profits of respondent for the fiscal year in question, before renegotiation, amounted to $580,083.08. Under the income tax laws of this State, respondent was required to file its income tax return for the fiscal year ending November 30, 1943, not later than February 15, 1944. Under the Renegotiation Act, the War Contracts Price Adjustment Board had one year in which to determine the amount of profits deemed to be excessive. On February 15, 1944, the prices fixed in such contracts and the amounts paid by such Government agencies had not been renegotiated or adjusted and the time allowed the Board for doing so had not expired. Therefore, the only figures available for the purpose of making a return for State income taxes were the original contract prices, showing a tentative net income in the amount of $580,083.08. On February 15, 1944, respondent filed with the Tax Commission a return on this basis, which showed an income tax liability of $26,103.74, and at that time paid the first quarterly installment due on said amount.

Shortly thereafter respondent was called upon by the War Contracts Price Adjustment Board to submit its rec-

ords for the purpose of renegotiation. After the necessary information was furnished, various conferences were held between respondent and said Board, as a result of which the Board determined that the profits received by respondent on the basis of the prices as originally fixed in the contracts were excessive to the extent of $350,000.00. Respondent accepted such determination and entered into an agreement whereby it was required to repay to the Government said amount of $350,000.00 in certain installments, less a credit of the amount which respondent had paid to the United States Government by way of Federal income and excess profit taxes thereon. In calculating and arriving at the amount to be refunded to the. Government, the Board allowed no credit and granted no adjustment to respondent for the amount of State income taxes based on the excessive profits for said year. In other words, the Board allowed as an adjustment of the amount otherwise payable State income taxes only on the amount of respondent's profits which remained after the refund to the Government, and no allowance was made to respondent for State income taxes on this amount of $350,000.00.

On May 19, 1944, after its profits had been renegotiated and finally determined, respondent filed with the Tax Commission an amended tax return for said fiscal year which showed a net taxable income of $239,391.48, on which the income tax liability would be $10,772.60. This amended net income represented the income shown on the original return, less the amount of $350,000.00 refunded to the Government, plus an adjustment of salary accounts consequent upon this reduction in respondent's net profits. The income taxes due according to the amended return were thereafter duly paid by respondent.

On November 28, 1944, the appellants disallowed respondent's amended return for said fiscal year and assessed an additional income tax against respondent for said period in the sum of $15,331.12, together with $766.56 as interest

thereon, and demanded payment of said assessment and interest. The assessment represented the difference between the income tax liability shown on the original return and that paid according to the amended return. On December 5, 1944, respondent paid under protest the amount assessed and interest and thereafter instituted this action for the recovery of said items.

Section 2445, Code of 1942, contains the following provision: "The net income of a taxpayer shall be computed in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if such method does not clearly reflect the income, the computation shall be made in accordance with such methods as in the opinion of the tax commission does clearly reflect the income." The accrual basis of accounting is approved by the Tax Commission and it was, therefore, permissible for respondent to keep its books according to this method.

There are two questions for determination: (1) Is respondent liable for State income taxes on the amount of $350,000.00 refunded to the Government under the Renegotiation Act? (2) If not, should said amount be allowed as a reduction in respondent's taxable income for its fiscal year ending November 30, 1943, or should said amount be deducted from its taxable income during the year in which it was refunded?

We think the first question presents little difficulty and must be answered adversely to appellants. "Income, as used in a tax statute, is to be taken in its ordinary sense of gain or profit." 61 C. J., page 1577. The amount of $350,000.00 which has been refunded to the Government cannot be soundly classified as gain or profit. War conditions have necessitated purchasing by the Government with considerable less attention to accurate pricing than is normally involved in its procurement policy. On account of some of the articles purchased being new, it is

difficult in many cases to establish in advance a reasonable cost. Time is an essential element and price considerations cannot be allowed to delay prompt procurement. There is little or no opportunity for negotiation in advance of purchasing. In many instances normal competition is lacking. Through the fault of no one frequently the contract prices yield profits that are wholly out of line. Through renegotiation these excessive profits are eliminated. The initial prices fixed in these war contracts are, therefore, merely tentative and any refund brought about by a reduction in the contract prices through renegotiation merely reduces the gross income of the contractor to that extent. The contractor receives the original contract prices impressed with the obligation to make restitution to the Government to the extent that such prices are subsequently determined to be excessive. When the refund in question was made by respondent to the Government, the amount returned could no longer be regarded as having been income at any time. "The law does not contemplate that that is income of the taxpayer which belongs to another." *Eakins v. United States, D. C.,* 36 F. (2d), 961, 962. As recently stated by the Supreme Court in *Commissioner v. Court Holding Co.,* 324 U. S. ——, 65 S. Ct., 707, 708, "the incidence of taxation depends upon the substance of a transaction." To denominate the amount refunded to the Government as "income" would be an unwarranted distortion of the true meaning of the word and would be contrary to the underlying principle of income taxes.

Counsel for appellants contend that the item of ■■ $350,000.00 represents a "deduction" and that the Income Tax Act of this State contains no provision allowing such a deduction. It seems to be well established that "deductions from gross income are not a matter of right. They are a matter of legislative grace, and a taxpayer claiming a deduction must bring himself squarely within

the terms of a statute expressly authorizing it." *Hales-Mullaly, Inc., v. Commissioner of Internal Revenue,* 10 Cir., 131 F. (2d), 509, 511. There are numerous other cases to the same effect. But we think it clearly appears that the usual rules applicable to "deductions" in income tax returns have no application here. This item is not a "deduction" from gross income, but it relates to the amount of gross income. The amount of gross income must be first determined before consideration can be given to deductions and the true gross income of respondent cannot be determined without consideration of this refund. Respondent only sought by its amended return to reflect its true income and did not seek to claim a deduction from such income.

It is argued that the State of South Carolina was not a party to this renegotiation and is not bound by the determination or adjustment made in reference to respondent's profits. There is nothing in the record to suggest any collusion between respondent and the Government, or to show any unfairness on the part of either party in these renegotiation proceedings. We must, therefore, assume that there was a fair determination of the question involved. Finally, it is suggested that these is a grave question as to the constitutionality of the Renegotiation Act and that in the absence of any contest by respondent on this ground, it will be assumed that the refund was voluntary on its part. This question was not raised in the Court below and it is not referred to in any of the exceptions. The question, therefore, is not properly before us. Moreover, we intimate no opinion as to whether appellants' status is such that they are in a position to question the constitutionality of this legislation.

The determination of the second question is more difficult. Appellants contend that the $350,000.00 item constitutes income during the fiscal year in which it was received and was, therefore, taxable income for

the fiscal year ending November 30, 1943, and that if this item does not constitute taxable income, it could only be used as a deduction during the fiscal year when it was refunded to the Government, or the year in which the amount was definitely determined. In support of this contention, counsel for appellants argue that on November 30, 1943, respondent's liability to return any amount of these profits to the Government was wholly contingent; that at that time it had not been determined whether any of these profits were excessive and, if excessive, the amount to be refunded was uncertain; and that, therefore, respondent at the close of that fiscal year could not have accrued on its books any amount as excessive profits. Respondent denies that this item is in the nature of a deduction or that its liability for a refund was contingent on any future events. Respondent contends that this item relates solely to the 1943 fiscal year; that when the books were closed for this fiscal year, all facts upon which its liability to refund were based had occurred and the factors entering into the determination of the amount to be refunded were fixed; that only the computation of the amount, to be determined from these existing facts and established principles, was deferred; and that to allocate this item to the following fiscal year would result in a gross distortion of its income for both years by the use of an arbitrary and unwarranted method of accounting.

No case has been cited by counsel, and we have found none, passing upon the precise question to be determined. The cases most analogous in principle seem to us to be those relating to income taxes of railroads during the period of federal control in World War I. During this period the Government agreed to pay "just compensation" to the carriers. In their income tax returns for the years 1918, 1919 and 1920 many, if not all, of the carriers returned as income the estimated "standard return," which was the average annual railway operating income for the three years preceding federal control. Agreements fixing the amount of

"just compensation" were reached during the early twenties, at which time the payments made during the period of federal control were supplemented to the extent necessary to pay the amount agreed upon or fixed as just compensation. The Commissioner of Internal Revenue contended that this additional compensation should be accounted for as income during the year in which it was determined. The railroads contended that such additional compensation accrued during the years of federal control in which it was earned. It was uniformly held that such payments should be accrued over the years of such control and did not constitute accrued income for the year in which the award was finally determined. *Commissioner v. Old Dominion Steamship Co.*, 2 Cir., 47 F. (2d), 148; *Commissioner v. Midland Valley R. Co.*, 10 Cir., 57 F. (2d), 1042; *Helvering v. St. Louis Southwestern R. Co.*, 8 Cir., 66 F. (2d), 633, *certiorari* denied 292 U. S., 626, 54 S. Ct., 632, 78 L. Ed., 1481; *Helvering v. Gulf, Mobile & Northern R. Co.*, 63 App., D. C., 244, 71 F. (2d), 953, affirmed 293 U. S., 295, 55 S. Ct., 161, 79 L. Ed., 372.

In *Commissioner v. Old Dominion S. S. Co., supra* [47 F. (2d), 150], the Court said: "The government did not concede liability to pay merely the standard return but just compensation. Just compensation for the use of the properties for the years 1918, 1919, and 1920 was being incurred each year. Nothing remained to be determined at the close of each year except the amount of just compensation on the basis of the past facts and the established principles."

In *Commissioner v. Midland Valley R. Co., supra* [57 F. (2d), 1044], the Court had the following to say with reference to the opinion in *Commissioner v. Old Dominion S. S. Co., supra*: "The opinion is sound and it is supported by the statutes and authorities cited. It is criticized by counsel for the Commissioner because it failed to distinguish between compensation representing the standard return and

that in excess of it, and it is said that final compensation could not properly be accrued on the taxpayer's books. The criticism is not well founded. It prefers current book entries of receipts to compensation later reached after necessary delay, and confuses a certain liability with one dependent on future facts. The compensation of the railroad company was not contingent on any future event. Only the final ascertainment of it was deferred."

The case of *Baltimore & O. R. Co. v. Commissioner of Internal Revenue*, 4 Cir., 78 F. (2d), 456, is very similar in principle. The syllabus relating to the question under consideration is as follows: "Where railroad company kept books and made income tax returns on accrual basis, company's payment, in 1925, pursuant to Interstate Commerce Commission's certificate of that year, of subsidiary's indebtedness to United States Treasury for excessive earnings of subsidiary during six months' period of federal guaranty immediately following federal control, held deductible in company's income tax return for 1920, not for 1925, since liability was created and fixed by statute enacted in 1920, though amount was not determined until 1925. (Transportation Act 1920, § 209, 49 U. S. C., A., § 77.)"

In disposing of the question discussed in the syllabus, the Court said: "We are of the opinion that this question is controlled by the decision of the Supreme Court in the case of *Continental Tie & L. Co. v. United States*, 286 U. S., 290, 52 S. Ct., 529, 76 L. Ed., 1111, where the question involved was whether a payment similar to the one made here constituted taxable income for the year 1923, the year of the award and payment, or for the year 1920. The Supreme Court in that decision held that the award was taxable as accrued income for the year 1920, notwithstanding the amount of the award was not determined until a subsequent year. * * * A deduction should be accrued when all events have occurred which fix the liability, even though

the amount is uncertain. *United States v. Anderson,* 269 U. S., 422, 46 S. Ct., 131, 70 L. Ed., 347; *American National Co. v. United States,* 274 U. S., 99, 47. S. Ct., 520, 71 L. Ed., 946; *Brown v. Helvering,* 291 U. S., 193, 54 S. Ct., 356, 78 L. Ed., 725."

We now advert to the cases relied upon by appellants. Our attention is called to the "claim of right" theory, which is stated in *North American Oil Consolidated v. Burnet,* 286 U. S., 417, 52 S. Ct., 613, 615, 76 L. Ed., 1197, as follows: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." This rule has been followed and applied in a number of Federal cases which are referred to and annotated in 154 A. L. R., beginning on page 1276. Other cases relied on by appellants are *Dixie Pine Products Co. v. Commissioner,* 320 U. S., 516, 64 S. Ct., 364, 88 L. Ed., 270; *Security Flour Mills Co. v. Commissioner,* 321 U. S. 281, 64 S. Ct., 596, 88 L. Ed., 725. In the *Dixie Pine Products case* [320 U. S., 516, 64 S. Ct., 365], the Court said: "It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer."

We do not think the foregoing cases are applicable to the facts of the instant case. In a number of them the right on the part of the taxpayer to retain the money received depended upon events or circumstances which had not occurred during the year in which the money was received, but which might or might not occur in the future. In others, the taxpayer received the funds under an asserted claim that

they were his absolutely and any liability to refund such funds, or any portion thereof, was disputed and contested by the taxpayer.

In Mertens' Law of Federal Income Taxation, Volume 2, Section 12.103, in discussing the "claim of right" theory, the author said: "This principle applies generally where moneys paid over are in dispute. If a taxpayer receives moneys and uses them as his own under the asserted claim that they are his absolutely, and not contingently, the fact that his title to them is then in dispute and that they may be later recovered from him does not prevent such moneys for tax purposes, from being what he claims them to be, his own. Obviously, no rule of thumb is possible. Whether the property or cash is received under a 'claim of right' depends upon the particular facts, including the circumstances as to how the taxpayer took and used the moneys and the intention and understanding under which they were paid to and received by the taxpayer." In *Helvering v. St. Louis Southwestern R. Co., supra* (66 F. (2d), 634), the Court made the following observation with reference to the line of cases so strongly relied on by appellants: "There are some cases which contain expressions to the effect that it is necessary for the amount to be liquidated before the item can 'accrue', either as income or deduction, but such expressions occur in connection with some dispute as to any liability or where the liability or the amount of liability is contingent upon future happenings."

In the renegotiation cases, there are no future events or contingencies bearing on the amount which the taxpayer is required to return to the Federal Government as excessive profits, or his liability to do so. At the close of the year in which the money is received, although the amount has not been determined, all the events have occurred which fix the taxpayer's liability, and there only remains the administrative act of ascertaining the amount to be repaid from ex-

isting facts. At this time the amount to be refunded may be "unknown, but not unknowable." The taxpayer in these cases doesn't claim the amount received as his absolutely, nor does he contest the right on the part of the Government to renegotiate the contract prices. The gross profits thus received by him are merely tentative and he recognizes his liability to return any portion adjudged to be excessive. The situation of both the contractor and the Government is brought about by the exigencies of war. In many instances to determine the contract prices definitely in advance would result in a delay which might be seriously detrimental to the prosecution of the war. For all practical purposes, the obligation to renegotiate is not voluntarily entered into by the contractor, but one which is imposed upon him by the war emergency when it is his duty to cooperate with the Government in every way possible.

We think the liability to refund accrued during the fiscal year ending November 30, 1943, and should be allocated to that year in determining respondent's taxable income.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.