48 So.2d 36

### STATE v. BROWN.

6 Div. 919.

Supreme Court of Alabama.

Oct. 12, 1950.

A. A. Carmichael, Atty. Gen., and Wm. H. Burton, Jr., Asst. Atty. Gen., for appellant.

Spain, Gillon, Grooms & Young and Frank M. Young, all of Birmingham, for appellee.

216

STAKELY, Justice.

This is an appeal by the State of Alabama from a decree of the equity court declaring invalid an assessment made by the State Department of Revenue against S. A. Brown for income taxes for the year 1942 and ordering a refund of $6,635.97 as being in excess of the correct amount of such taxes.

During the calendar year of 1942 S. A. Brown was engaged in the plumbing contracting business in Birmingham, Alabama, where he resided. Prior to 1942 and during 1942 he entered into contracts with various principal contractors as a subcontractor for plumbing work on various war projects in Alabama, Mississippi and elsewhere. On April 28, 1942, the Congress of the United States enacted the Federal Renegotiation Act, 50 U.S.C.A.Appendix, § 1191 and amendments thereto, which provided that each fixed price or lump sum contract or subcontract in an amount in excess of $100,000 was subject to renegotiation and directed the Secretary of War to renegotiate the contract price in order to eliminate such profits as are found to be excessive. Pursuant to the act renegotiation agreements were embodied in war contracts made thereafter and supplemental agreements providing renegotiation terms were made a part of contracts then in existence.

During the calendar year 1942 S. A. Brown received substantial amounts under his subcontracts which were subject to renegotiation. Of the sums so paid to him during the year 1942, S. A. Brown reported to the State Department of Revenue in 1943 on his state income tax return for 1942 the gross amount of $1,950,636.69 and out of such amount a net profit of $565,414.-31. The amount of $310,000, the amount in controversy in this cause, was a part of the aforesaid amounts paid to S. A. Brown by the Federal Government as aforesaid. These funds were paid to him without restriction as to how he could use or dispose of them.

As a result of the renegotiation by the War Department of his contracts, all of which were subcontracts, a renegotiation agreement was executed by S. A. Brown and the Secretary of War on January 10, 1944, whereby S. A. Brown agreed to pay or credit the United States the sum of $145,000 and also the sum of $165,000 as reductions in the contract price of contracts renegotiated. So the war subcontracts of S. A. Brown were reduced to the extent of $310,000 which was repaid by him to the United States Government.

In the year 1942 S. A. Brown was on a calendar year basis for reporting both federal and state income taxes and also was on a cash accounting basis. Such accounting basis remained unchanged during 1943, 1944 and 1945. S. A. Brown elected to file his state income tax returns for those years on the cash accounting basis. It was stipulated between the parties that "on to wit August 22, 1944, S. A. Brown, taxpayer, duly and properly filed application for refund of income tax with the State Department of Revenue at Montgomery, Alabama. Agreements were made from time to time between S. A. Brown and the State Department of Revenue extending the time for making the final assessment 'for 1942 against S. A. Brown.

The question for decision is whether the $310,000 received by S. A. Brown in the year 1942 on his war contracts, subject to renegotiation, was income for the year 1942 on which the State of Alabama is entitled to be paid an income tax. The State

Department of Revenue assessed him with such tax. The equity court to which an appeal was taken from the assessment declared the assessment invalid and ordered a refund as stated.

For a thorough understanding of the present case its background should first be mentioned. The controversy between the parties here arose under a war time economy brought about by unusual conditions existing in war time. The contracts of appellee were performed at a time when the object was to get the job done, the idea being that the price for the job was to be determined later. The United States Government was not concerned at the time with the socalled "agreed price" as provision was made under the Federal Renegotiation Act to give protection to the United States Government so that the actual price ultimately to be received by the contractor would be safeguarded through renegotiation.

S. A. Brown is not claiming a deduction from gross income for the calendar year 1942 because of the repayment of a debt to the Federal Government. He is here urging that the $310,000 received by him from war contracts in the calendar year 1942 and which ultimately was repaid to the Federal Government was never gains, profits or income to him. Gross income is defined in § 384, Title 51, Code of 1940 as follows: "The term 'gross income' as used herein: (1) Includes gains, profits and income derived from salaries, wages * * *."

In § 384, Title 51, Code of 1940 net income is defined in substance as the gross income as defined in § 384 less the deductions allowed by § 385, Title 51, Code of 1940. Since the initial prices as fixed in the war contracts were subject to renegotiation, they were obviously merely tentative prices and it was expressly provided in the renegotiation agreements that "in the event that such renegotiation results in a reduction of the contract price, the amount of such reduction shall be retained by the Government or repaid to the Government by the contractor, as directed by the Secretary of War." So under the very contracts under which S. A. Brown received

payment from the Federal Government, he was charged with notice that he was receiving such sums of money as tentative payments only. Although he received such sums of money, we do not think it can be said that, to the full extent of the amounts received, he was enriched as a result of the receipt of such sums or that his assets had been increased or that he had realized a profit therefrom so long as the matter of renegotiation was open or undetermined. As we shall see S. A. Brown took the proper steps to keep final determination of his tax open until the renegotiation of his contracts was concluded.

In the case of State v. Flenner, 236 Ala. 228, 181 So. 786, 790, the Supreme Court of Alabama defined income as follows: "It is to be given a broad meaning. It must be rationally construed and not stretched to include purely theoretical as distinguished from practical conceptions. Income as a subject of taxation imports an actual gain. It must mean an increase of wealth out of which money may be taken to satisfy the pecuniary imposition laid for the support of government." See also Brown v. Long, 242 Mass. 242, 136 N.E. 188; Brandon v. State Revenue Commission, 54 Ga.App. 62, 186 S.E. 872; 34 Words and Phrases, Perm. Ed., p. 215; Southern Weaving Co. v. Query, 206 S.C. 307, 34 S.E.2d 51.

In the Query case, supra, where the Federal Renegotiation Act was involved, the same contention was advanced by the tax authorities as here made, that is that the sums paid to appellee were received by him under a claim of right and that he could use and dispose of such sums as he saw fit. In that case it was pointed out by the court that the right of the taxpayer to retain the money did not depend upon subsequent events. It was shown that at the time the contractor was performing his contract and when he received the funds, he knew and agreed in effect that he received these funds with the obligation to make restitution to the Government to the extent that such prices were subsequently determined to be excessive. So in that case as here all the facts upon which the taxpayer's liability to make refund to the Government had occurred and the factors were then

fixed that were to be considered in determining the amount to be refunded. Only the computation of the amount to be refunded had then not been made. In the present case all the factors and all other contingencies and conditions upon which the amount to be calculated for repayment were in existence and then known in 1942. The only thing unknown in 1942 was the exact amount to be returned, if any, but this was not at that time unknowable. We do not consider that the $310,000 in question constituted a gain or profit under the Alabama state income tax statute.

But it is argued that S. A. Brown made a return on a calendar year and cash basis. In other words, in accordance with Burnet v. Sanford and Banks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, the proposition is advanced that when the calendar year was at an end the rights of S. A. Brown became fixed and that he could not have his taxable income for 1942 so reduced by a renegotiation of the Federal Government made in subsequent years. We quite understand and appreciate the necessity and value of the rule which provides that the taxes on income actually received in one year may not be withheld because the transaction from which such income flows has not been completed in that year and losses may thereafter occur in a subsequent year. But the situation here is different. Within the time allowed by the Alabama statute S. A. Brown filed his petition under § 410, Title 51, Code of 1940, for a refund because he had received notice that his contracts would be renegotiated. The very purpose of § 410, Title 51, Code of 1940 is to permit of a correction of the amount of the tax where the tax has been erroneously paid. State v. Woodroof, 253 Ala. 620, 46 So.2d 553, 562. We do not think that the good purposes of this statute should be thwarted in this case because it was determined subsequent to 1942 that amounts paid to the taxpayer in 1942 were excessive and subject to refund. If this were true the statute would be emasculated.

It is said by the state that S. A. Brown could take deductions in years subsequent to 1942 for repayments made to the Government in such years. But this is not the re-

lief to which appellee is entitled. He is entitled to have his taxable income for 1942 reduced by the amounts he has been required to return to the Government and his tax for 1942 computed accordingly. Due to variation in income from year to year a deduction in a subsequent year might be of much lesser value to the taxpayer than reduction of taxable income in the year in question.

The decree of the lower court is correct and should be affirmed.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.