261 So.2d 410

**STATE of Alabama, DEPARTMENT OF REVENUE**

**v.**

**FUQUA INDUSTRIES, INC., a Corporation (NATCO Corporation).**

**3 Div. 38, 3 Div. 39.**

Court of Civil Appeals of Alabama.

April 19, 1972.

**2**

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue and Asst. Atty. Gen., for the State.

Euel A. Screws, Jr., Montgomery, for appellee.

THAGARD, Presiding Judge.

Appeal by the Alabama Department of Revenue from a final order of the Circuit Court of Montgomery County, in Equity, setting aside a deficiency income tax assessment against Fuqua Industries, Inc., of $22,750.64, and holding that Fuqua was entitled to a refund for overpaid income taxes of $13,161.55.

The taxpayer, Fuqua Industries, is a Pennsylvania corporation, qualified and licensed to do business in Alabama. Fuqua manufactures and sells structural clay

products such as tile and bricks. Its home office and principal place of business is in Pittsburgh. It also maintains offices and manufacturing plants in Brazil, Indiana, Ohio, New Jersey and Alabama. The State conceded that Fuqua is a unitary corporation operated under the centralized management and control of the Pittsburgh office. All accounting functions, including payrolls, were performed for all plants by the Pittsburgh office to the extent of actual work scheduling and inventory control. All product research and development was conducted under the direction of the Pittsburgh office.

The income tax liability for a foreign corporation doing business in Alabama under Tit. 51, § 398, Code of Alabama 1940, as Recompiled in 1958, is determined by one of the two methods set out in Income Tax Regulation No. 398.2, entitled "Determination of Income from Multi-state Operations." This regulation requires the foreign corporation to use either the "direct" (or separate) method of reporting or the "apportionment method" of reporting. For 1966 and several years prior thereto, Fuqua used the separate method of reporting. It estimated its Alabama income and then deducted the federal tax which would have been assessed on that income had Fuqua only operated in Alabama. For 1966 Fuqua filed an Alabama income tax return showing the following:

"Net income for Alabama $984,152.00
"Less federal taxes which
   *would have been paid*      465,893.00
"Taxable Alabama income $518,259.00
"Total Alabama Tax re-
   ported due and paid      $ 25,912.95."

In 1966, Fuqua's entire multi-state operation earned only $355,728.00. Fuqua actually paid only $116,560.00 in federal income taxes. The Alabama Department of Revenue disallowed Fuqua's federal tax deduction and ruled that it could deduct only the amount of federal taxes actually paid. The Department also disallowed a depletion deduction which is not contested by Fuqua.

Fuqua complied with the proper procedures for taking an appeal from a final income tax assessment. Fuqua then filed an action at law in the nature of a petition for mandamus and a bill of complaint in Equity. Both actions asked for a refund of overpaid income taxes. They were tried and submitted together.

The trial court held in each case that the assessment made by the Department of Revenue was "illegal, invalid and excessive" in the full amount of said assessment and that the taxpayer was entitled to a refund for the year 1966 in the amount of $13,161.55, together with interest thereon from June 15, 1967. From the judgment on the law side and the decree on the equity side the State brings this consolidated appeal.

On appeal, the State contends that the taxpayer has elected a method of accounting for income tax purposes and should not be allowed to amend his return to obtain an admittedly more favorable tax result. They argue that the taxpayer must obtain the approval of the commissioner of revenue to change from his elected method of accounting. Furthermore, the commissioner need not approve a method that does not, in his opinion, reflect the taxpayer's operations in Alabama.

The Department of Revenue quotes its Regulation 398.2, in part, as follows:

" 'Foreign corporations or non-resident individuals engaged in business within the State of Alabama shall be taxed on such income as is derived from business transacted and property located within the State. The amount of such income apportionable to Alabama may be determined:

" '(a) By separate accounting when, *in the judgment of the Commissioner of Revenue, that method will reasonably reflect the income properly assignable to* Alabama (see Reg. 404.2) ; or

" '(b) If separate books of accounting and records *acceptable to the Commissioner* are not maintained reflecting ac-

curately the income from sources within the State, the income shall be apportioned to Alabama on the basis of application to apportionable income of the ratio obtained by taking the arithmetical average of the following three ratios: * * * ' " (Emphasis supplied) ;

after which it argues that the regulation has been on the books, unchallenged, for many years and should be applied. We do not understand that the taxpayer challenges the legality of this regulation or seeks to have it set aside, but contends that the regulation should not be used so as to discriminate among taxpayers. The taxpayer further contends that the controversy arose when the Revenue Department disallowed its method of reporting its 1966 federal income tax, although it had reported by the same method for the five preceding years without objection on the part of the Department of Revenue. It further contends, and the Department does not dispute, that it had paid more tax during those five years, even with its method of calculating and deducting its federal taxes on the separate method, than it would have paid had it reported on the apportionate method; that evidently the disallowance of the method of reporting its federal income tax was the result of a conclusion by the Commissioner of Revenue that the separate accounting method no longer reasonably reflected the income properly assignable to Alabama, in which event, by the very words of the rule, the Department should have placed the taxpayer on the apportionate method. We think the argument has merit.

But, the Department of Revenue contends that once the taxpayer had made its election to report on the separate basis, and the time had passed for filing its return, it should not be allowed to amend its return and report on the apportionate basis, and cites the case of Mamula v. C. I. R., 9 Cir., 346 F.2d 1016, and quotes therefrom as follows:

" 'We agree with the reasoning of the Supreme Court without reservation, on the facts of the Pacific National Case. *Once a taxpayer makes* an election of one of two or more alternative methods of reporting income, he should not be permitted to convert of his own volition when it later becomes evident that he has not chosen the most advantageous method * * * ' (Emphasis supplied).",

after which the Department says as follows:

"The above is the correct statement of the law as it applies in the instant case even though in the *Mamula* case the Federal District Court found that the taxpayer had not been given the opportunity of choosing equally reliable methods of reporting his income. Since he had not been given this choice, he was not bound by his election. However, in the instant case the taxpayer was given his choice of one of two methods either of which would reflect his income and the tax due the State of Alabama, and the mere fact that one would be more advantageous than the other is not sufficient reason for allowing him to change once he has made his election."

We disagree with the Department in that, as we read Regulation 398.2 the discretion is in the Commissioner and not in the taxpayer. The regulation reads in part as follows:

"The amount of such income apportionable to Alabama *may be determined:*

"(a) By separate accounting when, *in the judgment of the Commissioner of Revenue* that method will reasonably reflect the income properly assignable to Alabama (see Reg. 404.2) ; or

"(b) If separate books of accounting and records *acceptable to the Commissioner* are not maintained reflecting accurately the income from sources within the State, the income shall be apportioned to Alabama on the basis of application to apportionable income of the ratio obtained by taking the arithmetical average of the following three ratios. . . ." (Emphasis supplied)

Under the foregoing rule, the Commissioner, and only the Commissioner, may elect as to the accounting basis upon which the tax *shall be determined,* but even the Commissioner may exercise such discretion only upon the basis of his finding as to which method of reporting will most accurately reflect the income of the taxpayer from sources within Alabama. We think it significant that the regulation uses the words "may be determined" instead of "may be reported." To repeat ourselves, the duty is squarely on the Commissioner to *determine* the amount of tax due and he is bound to *determine* the tax by the method that will most accurately reflect the income of the taxpayer from sources in Alabama. Nowhere in the stipulation or otherwise in the record does it appear that the Commissioner of Revenue made a finding that the direct or separate method of accounting reasonably reflected the income properly assignable to Alabama, or that he made a finding that the apportionate method did not reasonably reflect the income properly assignable to Alabama.

■ That the direct or separate method did not reasonably reflect the income assignable to Alabama is made obvious by the following stipulated facts:

(a) Under that method the income for Alabama, before federal tax, was $984,152.00, whereas the taxpayer's total federal taxable income from its entire multi-state operation was $355,728.00;

(b) Had Fuqua operated only in Alabama its federal income tax would have been $465,893.00, whereas on its entire multi-state operation its federal income tax was $116,500.00.

(c) The State proposes to collect from the taxpayer $47,706.77 in 1966 income taxes, which is 13.4% of the taxpayer's entire net income or 2½ times the maximum state rate on corporation income prevailing at that time.

■■ The Department of Revenue contends that § 410 of Tit. 51 is not applicable to this case, the title of which reads, " § 410. Tax paid through mistake or error.", saying that there was no mistake or error because the taxpayer willfully chose its method of reporting. But the Supreme Court in State v. Brown, 254 Ala. 215, 48 So.2d 36, said:

"The very purpose of § 410, Title 51, Code of 1940 is to permit of a correction of the amount of the tax where the tax has been erroneously paid. State v. Woodroof, 253 Ala. 620, 46 So.2d 553, 562. We do not think that the good purposes of this statute should be thwarted in this case because it was determined subsequent to 1942 that amounts paid to the taxpayer in 1942 were excessive and subject to refund. If this were true the statute would be emasculated." (254 Ala. at page 218, 48 So.2d at page 39)

We see no difference in the overpayment of tax because of a misapprehension as to the correct method of reporting and an overpayment resulting from reporting income that later had to be refunded to one with whom the taxpayer had done business or, as for that matter, an overpayment resulting from a mathematical error. We hold that § 410, supra, was available to the taxpayer in this case.

We think that some of the elements of Outlaw v. State, 244 Ala. 153, 12 So.2d 388, are not unlike some of the elements in this case. In the *Outlaw* case the State Department of Revenue ascertained that the taxpayer had failed to report corporation dividends of $4,447.10, and notified the taxpayer of its intention to make a deficiency assessment of $222.35, that being the tax due on the unreported income. Pending the final determination the taxpayer claimed an additional deduction of some $20,000.00 for the loss by freezing of 3,341 satsuma orange trees. The Department allowed a deduction of $1,169.35 from the gross income for the year and ordered a deficiency assessment of $163.38. The taxpayer paid the amount of the deficiency assessment and appealed to the Circuit Court of Montgomery County. The Cir-

cuit. Court allowed a deduction of $15,869.75 for the loss of the trees and found that the total payment of $547.65 was excessive in the amount of $525.74, and that the taxpayer was not subject to any deficiency assessment of income tax for 1938, but ordered a refund to the taxpayer of only $168.38, being the amount of the deficiency assessment paid by the taxpayer at the time of taking his appeal to the Supreme Court. On the appeal the State insisted that such repayment would be, in effect, a refund of taxes which had been erroneously paid with the filing of the original return, and for which no claim for refund had ever been filed, and more than two years had elapsed from the date of such payment. The Court, speaking through Justice Livingston, said that the State's position was untenable and reversed and remanded. Justice Livingston wrote, inter alia, as follows:

"The final assessment of appellant's income tax due for the year 1938 was made by the Department of Revenue on October 31, 1941. Appeals to the circuit court, in equity, and to this court were perfected in accordance with the provisions of the statute. The entire assessment was before the court for adjudication, and if any part of the assessment is illegal, it must be returned to the taxpayer. Equity and good conscience, and the plain language of the statutes, demand no less.

"We hold that appellant's income tax liability for the year 1938 is the sum of $21.91. All sums paid by appellant in excess of that amount, together with interest thereon, in accordance with the provisions of the statute, are ordered repaid to him." (244 Ala. at page 156, 12 So.2d at page 391)

We hold that there was no error in the judgment of the court on the law side or the decree on the equity side and that they should be and hereby are

Affirmed.