BRADLEY, Judge.
The State of Alabama, Department of Revenue, appeals from a judgment of the Circuit Court of Montgomery County ordering the commissioner of revenue to certify to the comptroller of the State of Alabama that $5,016.05 of state income taxes plus interest be refunded to the First National Bank of Birmingham as executor of the estate of Abe Klotzman, deceased. We reverse.
In 1963 Abe Klotzman and Ralph C. Blach were named co-trustees of the Fabian Trust (hereinafter referred to as “Trust”), which was created by the Last Will and Testament of Klotzman’s sister, Rosa Klotz-man Fabian. Klotzman later became the sole trustee of the Trust upon the death of Mr. Blach.
In 1973 Mr. Klotzman sold some of the Trust real estate located in Mississippi for the sum of $121,235.69 pursuant to an express power granted him by the Fabian Trust. The Trust stated that:
The trustees shall have power to determine whether any money or property coming into their hands shall be treated as a part of the principal of said trust estate or a part of the income therefrom, and to apportion between principal and income any loss or expenditure in connection with said trust estate as to them may seem just and equitable, provided that the trustees shall conform to the law of the State of Alabama in this respect.
In this same year, 1973, in accordance with the powers granted to him as trustee of the Trust, Klotzman distributed to himself, as sole income beneficiary of the Fabian Trust, the $121,235.69 proceeds from the land sale in Mississippi.
In compliance with Alabama law, the Trust was allowed a deduction from income of $121,235.69 on its 1973 federal and state fiduciary return for the money distributed to Klotzman. Klotzman then included the $121,235.69 in his 1973 federal and state individual tax returns as income.
In April 1976 a petition for declaratory judgment was filed in the Circuit Court of Jefferson County by the remaindermen of the Fabian Trust, for construction of the Trust, seeking to require Abe Klotzman to restore the $121,235.69 to the principal of the Trust.
On January 12, 1977 a final consent decree was entered for the remaindermen, stating:
That the said Abe Klotzman, as Trustee, under the trust established under the Last Will and Testament of Rosa Klotz-man Fabian has transferred, delivered, *471 remitted and paid over to said trust estate, established under the trust of the Last Will and Testament of Rosa Klotz-man Fabian, certain property and cash as the profit received from the sale of Mississippi land, which property and money be and is hereby allocated to the principal or corpus of said trust and is accepted in lieu and in full settlement of the $121,-235.69 heretofore allocated by the defendant to income.
In compliance with the decree, Klotzman remitted the $121,235.69 to himself as trustee of the Trust to be applied to the principal of the Trust.
The consent decree further ordered Klotzman to amend the state and federal income tax returns previously filed for the estate covering the year 1973, in order to:
[P]roperly reflect therein the allocation of the gain from the sale of said real estate amounting to the said sum of $121,235.69 to the principal or corpus of said trust estate, and file such amended returns with the appropriate state and federal agencies on or before April 15, 1977, and pay any resulting taxes from principal.
Mr. Klotzman died before he could comply with this order, and the executor appointed to administer the Trust included in the 1977 fiduciary return filed for the Trust the entire amount as income. The parties to this proceeding stipulated that the executor correctly included the sum as income for 1977.
After denial of request for refund by the Department, appellee, First National Bank of Birmingham, as executor of the estate of Abe Klotzman (hereinafter referred to as “Taxpayer”), filed a petition for writ of mandamus in the Circuit Court of Montgomery County on August 7, 1978 asking that the court order Charles A. Boswell, Commissioner of the Alabama Department of Revenue (hereinafter referred to as the “Revenue Department”) to refund the sum of $5,016.05 in income tax paid by the Taxpayer on his 1973 Alabama individual return.
On March 2, 1979 the circuit court ordered the Revenue Department to make the requested refund to the Taxpayer. The Revenue Department appeals from that order.
The sole issue here is whether the repayment of the money to the Fabian Trust in 1977 entitles the Taxpayer to a deduction in his 1977 individual tax return, as the Revenue Department contends, or, can the Taxpayer file an amended 1973 individual tax return reducing his 1973 gross income by the amount repaid and thereby be allowed a refund under the 1975 Code of Alabama, § 40-18-43 for taxes paid “through mistake or error” as the Taxpayer claims.
The Taxpayer claims that he should be entitled to the refund as allowed under § 40-18-43 of the Alabama Code. This section reads in pertinent part as follows:
In case any taxpayer has through mistake or error paid an income tax which he is not legally due or has paid an amount in excess of which he was in fact due, such taxpayer may make application on forms furnished therefor to the department of revenue to have such amount erroneously paid refunded. .
The trial court based its decision in granting the refund solely on the reasoning used in State v. Brown, 254 Ala. 215, 48 So.2d 36 (1950). In this decision the Alabama Supreme Court explained that, “The very purpose of § 410, Title 51, Code of 1940 [the predecessor to § 40 — 18—43 of the 1975 Code of Alabama] is to permit [sic] of a correction of the amount of the tax where the tax has been erroneously paid.”
The Taxpayer contends in his brief that the trial court correctly relied on the Brown case as it is analogous to the case at bar. The facts in Brown are that the taxpayer received income in 1942 from work performed under various subcontracts entered into prior to and during 1942. However, these payments to Mr. Brown were expressly stated to be subject to renegotiation. In 1944 the subcontracts were in fact renegotiated and the taxpayer, Mr. Brown, had to return some of the money he had received in 1942. The issue in Brown was whether $310,000.00 received by Brown in 1942 on *472 four subcontracts, subject to renegotiation, was income for the year 1942, and thus subject to Alabama income tax. In other words, should the $310,000.00, received in one year and later repaid in another year, have been excluded as gross income and taxed in the year that it was initially received. Our supreme court held that the money received in 1942 and subsequently repaid in 1944 should not have been included in income in 1942.
The Taxpayer claims that the Brown decision is dispositive of the present appeal for the following reasons:
(1) In Brown the repayment in question results from a subsequent determination that the original payments were excessive. In the case at bar the repayment resulted from a subsequent judicial determination that the land sale proceeds did not constitute income to the Trust, and, therefore, were not properly payable to the income beneficiary.
(2) In Brown the funds were paid to him (Brown) without restriction as to how he could use or dispose of them. The appellee notes that there were no restrictions on Mr. Klotzman’s use of the money in the present case as well.
However, the Revenue Department correctly states that the decision in State v. Brown is distinguishable from the case at bar, and thus is not applicable. The supreme court’s decision in Brown, that the payment in 1942 was not considered income for income tax purposes, was based on the fact that the money Mr. Brown received was “tentative,” and that the true profit was “open and undetermined.”
Since the initial prices as fixed in the war contracts were subject to renegotiation, they were obviously merely tentative prices and it was expressly provided in the renegotiation agreements that “in the event that such renegotiation results in a reduction of the contract price, the amount of such reduction shall be retained by the Government or repaid to the Government by the contractor, as directed by the Secretary of War.” So under the very contracts under which S. A. Brown received payment from the Federal Government, he was charged with notice that he was receiving such sums of money as tentative payments only. Although he received such sums of money, we do not think it can be said that, to the full extent of the amounts received, he was enriched as a result of the receipt of such sums or that his assets had been increased or that he had realized a profit therefrom so long as the matter of renegotiation was open or undetermined.
This court agrees with the Revenue Department that in the present case the money received by Taxpayer in 1973 was clear of any conditions or restrictions. Thus, the $121,235.69 was correctly included as income in 1973 entitling him to only a deduction in his 1977 individual tax returns.
The Taxpayer further contends that the Brown decision was upheld and applied in a later decision, State v. Fuqua Industries, 48 Ala.App. 1, 261 So.2d 410 (1972). This court agrees with the Department that the only relationship between these two cases is that the refund statute of § 410, Title 51, Code of Alabama 1940 (currently § 40-18-43) is involved. The facts in the Fuqua decision involved the actual overpayment of tax because of an error in the taxpayer’s reporting method. This court held in Fuqua that a tax, paid through an error in reporting, is properly refundable under § 410, Title 51, Code of Alabama 1940 (§ 40-18-43).
The supreme court held a refund was due in the Brown case because the money received in 1942 should not have been included as income in that year. The Fuqua case does not involve in any way a granting of refund because of the subsequent repayment of money received. Only Brown deals with that issue, which is distinguishable on its facts.
The Taxpayer further states that he should be allowed a refund under § 40-18-43 of the Code of Alabama 1975 for mistake since, as he claims, the Alabama court has recognized a broad application of this statute in Fuqua.
*473 This Court delineated in Fuqua the following instances as constituting mistake or error: (1) overpayment of tax because of misapprehension as to the correct method of reporting; (2) overpayment resulting from reporting income which later has to be refunded to one with whom the taxpayer has done business (State v. Brown); (3) overpayment resulting from mathematical error; (4) where the duty was on the commissioner of revenue, under Department of Revenue regulation, to determine the amount of income tax due, and to determine the tax by the method most accurately reflecting income of the taxpayer from sources in the state, and direct or separate reporting method used to compute the taxpayer’s income did not reasonably reflect income assignable to the state, then § 410, Title 51 of the 1940 Code of Alabama (§ 40-18 — 43) was available to the taxpayer.
The Taxpayer has the burden of proof to bring himself within the applicable statute. This the Taxpayer has failed to do to this court’s satisfaction; thus § 40-18 — 43 does not apply here.
It has been further argued by Taxpayer that if this court does not allow him the refund, that this would result in unjust enrichment from a double tax on the same transaction. We disagree. The Taxpayer paid an individual income tax on the amount he received in 1973 and got a corresponding deduction on the fiduciary tax return.
In 1977 he included the income on the fiduciary return and, likewise, he will get a deduction on his individual returns.
The appellant is correct in asserting that each transaction must be reported in the year of occurrence. The manner of reporting the transaction in that year, as in this case as income, cannot be amended where there is a loss which occurs later, so as to treat the original transaction on the basis of the long term result. Security Flour Mills Co. v. C. I. R., 321 U.S. 281, 64 S.Ct. 69, 88 L.Ed. 427 (1944).
Thus, once the money is received and properly reported as income — the situation here — and does not come under the Brown decision, subsequent events cannot change its taxability. This decision has been incorporated into the income tax regulation 14.1, which states:
Income actually received or accrued must be included in gross income, although losses may later incur against this income. An exception to this general rule occurs in situations involving the renegotiation of war contracts under federal statutes. Where repayment is made to the government as a result of renegotiation, the amount of income for the year of original payment is the amount of such payment less the amount refunded to the government, even though the repayment is made to the government in a later year. As long as the matter of renegotiation is open, the extent of the gain or profit of the contractor, if any, for that year of payment remains undetermined.
In view of the above stated reasons, this court finds that the trial court erred to reversal in ordering the Revenue Department to refund to the Taxpayer $5,016.05 instead of a deduction which is required in this case. Consequently, the judgment of the trial court is reversed and the cause remanded for entry of judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOLMES, J., concurs.
WRIGHT, P. J., concurs in the result.