Ivan H. Cummings, appellant, v. Jack Hunt et al., defendants;
Kalbach Realty Corporation, intervenor, Inez Walsh,
additional defendant in petition of intervention,
appellees.

No. 48129.

(Reported in 56 N.W.2d 8)

December 16, 1952.

Swisher & Swisher and Edward L. O'Connor, all of Iowa City, for appellant.

Henry W. Wormley, Assistant Attorney General, for Iowa State Tax Commission.

Valentine & Greenleaf, of Centerville, for intervenor.

Lake M. Crookham, of Oskaloosa, for Inez Walsh.

Gerald Heslinga, County Attorney, for Mahaska County.

BLISS, J.—The defendants, Emily Hunt and Jack Hunt, owned and operated a restaurant, known as the El Chappo Club, in Oskaloosa, in premises leased from the Kalbach Realty Corporation. In February 1951 there were unpaid taxes on the stock and equipment of the club, owing to Mahaska County for the years 1947, 1948, 1949 and 1950, which, with the penalties, totaled $1537.12.

On February 6, 1951, plaintiff filed suit for judgment on a note for $10,000, on which $1180 had been paid, and for the foreclosure of a mortgage on the stock and equipment, securing payment of the note. Both instruments were executed to John Agnew by Emily and Jack Hunt on March 3, 1947, and the mortgage was recorded on March 5, 1947. Agnew assigned the note and mortgage to plaintiff. The Iowa State Tax Commission and Mahaska County were made defendants, but nothing is stated in the petition as to the priority of the mortgage lien over any tax lien. The Hunts entered their appearance, waived time, confessed judgment on the note, and consented to disposition of the matter at any time by the court.

The intervenor filed petition February 14, 1951, alleging the occupancy of the property since November 1, 1945, by the Hunts under written lease, the nonpayment of rent of which $1100 was secured by landlord's lien, which was subject to plaintiff's lien, but was superior to the claims of all other defendants. It asked for the establishment and foreclosure of its lien.

The Iowa State Tax Commission filed answer alleging its sales tax lien to be prior and superior to the lien of plaintiff's mortgage.

Mahaska County filed answers to the petitions of plaintiff and of the intervenor, alleging the priority and superiority of its tax lien to any liens of the plaintiff and intervenor, praying that its lien be so established and in the event the property be sold that its said lien be transferred to the proceeds of the sale.

After the filing of the pleadings noted above, Inez Walsh filed answer to the petitions of the plaintiff and of the intervenor,

and also her cross-petition, alleging her ownership of a note for $2000 secured by mortgage on specified chattels in the restaurant, both executed by Emily Hunt on February 3, 1950. She alleged that the lien of her mortgage was prior and superior to all other liens against the property and prayed that it be so established by decree.

On May 25, 1951, with all parties appearing, the court— Judge R. G. Yoder presiding—filed decree that plaintiff was entitled to judgment on the note sued upon in the amount prayed and for the foreclosure of its mortgage, the lien of which was prior, superior and paramount to any lien or interest claimed by the tax commission or Inez Walsh or the intervenor. A special execution was ordered for the sale of all the mortgaged property and for the deposit of the proceeds of the sale with the clerk of the court. The court retained jurisdiction to determine the controversy between Mahaska County and the plaintiff.

On June 26, 1951, the plaintiff assigned his cause of action to John Agnew. The special execution, issued May 25, 1951, directing the sheriff to levy upon and sell the property covered by the mortgages of the plaintiff and of Inez Walsh, was returned by him on September 4, 1951. It included an itemized statement of the sheriff's sale with names of the purchasers, specifying the articles sold and the price received on each sale. There were one hundred eighty-three sales listed, but not that many different purchasers, as many made numerous separate purchases. The amount received by the clerk of court from the sheriff from the sale of property covered by the Agnew mortgage was $5570.26, after deducting expenses.

Application was filed by Agnew, assignee of plaintiff, on October 2, 1951, for payment to him of the amount in the clerk's hands after deduction of any costs or expenses. It was alleged in the application that at the sheriff's sale on June 23, 1951, the property covered by the assignee's mortgage was sold piece by piece and not in bulk, and that it did not sell for enough to satisfy his judgment. Inez Walsh and also the intervenor and Mahaska County filed resistances to the application. In its resistance Mahaska County alleged that its lien for unpaid taxes was paramount and superior to the lien of the assignee; that the property was sold under order of the court by the sheriff at one

sale, and was sold in bulk; that the lien of the county attached to the proceeds of the sale of the property which were being held under order of the court by the clerk pending the determination of the rights of the parties.

At the hearing before the court on October 10, 1951, with Judge Frank Bechly presiding, all matters of fact were agreed to by dictated stipulation, among them being that the net amount from the sale of property covered by the Agnew mortgage in the clerk's hands for distribution was $5555.76. Other matters passed upon by the court are not material to this appeal. The court found that the intervenor and the tax commission had relinquished any priority for their liens. As a matter of law the court concluded that the lien of Mahaska County for taxes, which the court found to be $1537.12, was paramount and superior to the liens of the mortgage holders, John Agnew and Inez Walsh, and decreed that the clerk of the court should distribute from the said sum of $5555.76 the following amounts: to the intervenor for costs of the sale including rent for five months, $445.17; to the clerk of the court for costs, $3.47; to Mahaska County for taxes, $1507.62; and to John Agnew, $3599.50. The remainder of the taxes owing to Mahaska County, being a balance of $29.50, was ordered by the court to be paid out of property covered by the Inez Walsh mortgage. This sum does not concern Mr. Agnew. He complains only of the sum of $1507.62 which was decreed to Mahaska County and taken from the proceeds of the sale of property covered by his mortgage.

I. John Agnew, the assignee-appellant, complains that the court's decree in awarding Mahaska County $1507.62 erroneously deprived him of that much money. There is no dispute over the facts. The controversy is one of law involving the construction of section 445.31 of the 1950 Code of Iowa, under the facts. The section is as follows:

"Lien follows certain personal property. Taxes upon stocks of goods or merchandise, fixtures and furniture in hotels, restaurants, rooming houses, billiard halls, moving picture shows and theaters, shall be a lien thereon and shall continue a lien thereon when sold in bulk, and may be collected from the owner, purchaser, or vendee, and such owner, purchaser, or vendee of

any of such goods, merchandise, furniture, or fixtures shall be personally liable for all taxes thereon."

Property of the kind designated in section 445.31 is usually assessed and the tax is usually levied upon it as a combined or aggregated whole, or, in other words, in bulk. If the articles are large and not numerous they could well be assessed and the tax levied on each separately. But stocks of goods or merchandise, and the equipment, furniture and fixtures of hotels, restaurants et al., ordinarily contain so many small articles that an assessment of or a levy on each item of property would be nearly impossible.

This section and its companion sections, 445.28 and 445.32, designated as sections 7202, 7205 and 7206 in the Code of 1935, were ably construed and discussed by Justice Hamilton, speaking for the court, in Linn County v. Steele, 223 Iowa 864, 273 N.W. 920, in which Justice Thompson of the present court, as county attorney of Linn County, advocated the decision which this court therein rendered. The three sections were all included in section 1400 of the Code of 1897 and the 1913 Supplement to it. In the Linn County case property involved in the tax controversy was a building taxed as personal property, section 7206, Code, 1935 (now section 445.32, Code, 1950), and a stock of goods and equipment of a restaurant operated in said building, section 7205, Code, 1935 (now section 445.31, Code, 1950). The owner of the building and contents had sold them in July 1933 under a conditional sale contract, with title reserved in the vendor until the purchase price was paid. They were free from tax liens when the contract was made and the property was delivered. The vendee failed to make the contract payments and the vendor repossessed the property in August 1935. But taxes had been separately assessed and levied against the building and contents in the name of the vendee for the years 1934 and 1935, and they were unpaid. The vendor contended that the conditional-sale contract lien was prior in point of time to the lien of the taxes, and that she took the property free from the tax liens. The county contended that though the tax liens came into being subsequent to the attaching of the contract lien they were, nevertheless, paramount and superior to the contract lien.

The district court held against the county, but granted it a certificate to appeal.

The vendor on the appeal did not contend that the taxes were not a lien on the property, but insisted that the tax lien was inferior to her contract lien because her lien had attached first in point of time. This court reversed the decision of the trial court and held the tax lien was superior to the contract lien. The fact that the sale of the property to the vendee was in bulk was not a factor in this court's decision.

The chief contention of assignee-appellant many times repeated is: "The court erred in holding that Mahaska County had a tax lien on the mortgaged chattels sold at auction piece by piece, to many different buyers by the sheriff under special execution to satisfy appellant's judgment in the foreclosure proceedings because there is no tax lien on personal property except when sold in bulk by a willing seller to a willing buyer and because this sheriff's sale was not a sale in bulk to one purchaser, but was a sale piece by piece to many different purchasers of the mortgaged personal property, taken by the court in legal custody for the purpose of satisfying plaintiff's judgment in the foreclosure proceedings and that all of said chattels were then taken in custodia legis by the sheriff on special execution. There was no bulk sale and there was no tax lien on said mortgaged personal property and no tax lien could be impressed on said personal property after it was thus taken in custodia legis for the purpose of satisfying appellant's chattel mortgage obligation." There is no merit to this contention and no authority cited by appellant tends to support it.

The fact that the sheriff in serving the special execution sold items of the property levied upon piece by piece to many purchasers did not affect or deprive Mahaska County of its tax lien. That lien was asserted and claimed by it in its answer to the plaintiff's petition for foreclosure. The county's tax lien had attached to the property long before and the encumbrance was on it when plaintiff began his suit. It remained there when the special execution was issued and when the sheriff took the property under the levy, and it was on the property in bulk when the sheriff sold it. It was immaterial whether the sheriff sold the property in bulk or by piece. He no doubt sold it the

way that he thought would be most advantageous to all lien holders. No one is asserting that any tax lien or any mortgage lien followed any piece of property sold into the possession of a purchaser. The property as a whole was burdened with two asserted liens and the court directed him to sell the property and deliver the proceeds of sale to the clerk of the court to await the court's determination of whether the county had a tax lien on the property and whether it took precedence over the assignee-appellant's conceded lien. The court decided both questions in favor of Mahaska County, and it is our conclusion that the court was right in each conclusion.

The judgment and decree of the district court is therefore affirmed.—Affirmed.

MULRONEY, C. J., and OLIVER, GARFIELD, WENNERSTRUM, MANTZ, HAYS, and THOMPSON, JJ., concur.