46 So.2d 553

### STATE v. WOODROOF et al.
#### 8 Div. 476.

Supreme Court of Alabama.
May 18, 1950.

622

A. A. Carmichael, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellant.

Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, A. F. Prescott and F. E. Youngman, Sp. Assts. to Atty. Gen., for appellee United States.

of assets of an insolvent corporation, Automatic Gas Company of Athens, Alabama.

On June 4, 1948, a petition was filed in equity by all the stockholders alleging insolvency of the corporation and inability to carry on its business and praying that it be dissolved and a receiver appointed to make proper distribution of its assets. The court on the same day made an order dissolving the corporation and appointing a receiver. On June 10, 1948, the receiver filed a petition to sell all the property, attaching an inventory of the real and personal property, and alleging that there is a mortgage on the greater part of the personal property and on all of the real property of the corporation and a vendor's lien on a portion of the real property, and that it would be to the interest of the creditors to sell it all free from encumbrances and that said lien and mortgage be paid out of the proceeds of the sale.

On the same day the court ordered such a sale to be made by the receiver after specified publication, either publicly or privately, and that all creditors file their claims in said court by August 11, 1948, and that notice of said order be published as directed. Such notice was given. On June 16, 1948, the receiver filed a petition for authority to sell a Jeep to the holder of a conditional sales contract in consideration of satisfying the debt, and for $300 to be paid over and above the debt. The court confirmed said transaction on the same day.

On June 18, 1948, the receiver filed a report of sale of the other assets of the corporation for $15,750, and that same had been paid. On June 19, 1948, the court confirmed said sale and ordered a deed to be executed to the purchaser.

On June 28, 1848, the First National Bank of Fayette, Alabama, filed a claim for the principal sum of $5,750 and interest $460 and attorneys' fee of $655, making a total of $6,865 by mortgage on real and personal property.

On the same day Glaze and Grisham filed a claim for the sum of $800.82 and attorney's fee of $114.08 by a vendor's lien on certain land of the corporation.

Malone & Malone, of Athens, for appellee Woodroof, receiver.

FOSTER, Justice.

This appeal brings up for review orders of a court of equity making distribution

On July 1, 1948, the receiver filed a petition for the allowance and payment of those two claims last above stated. And on the same day the court made an order that the receiver pay said claims in full. Various unsecured claims were filed within the time specified in the order.

On July 3, 1948, the tax collector of the county filed a claim for ad valorem State and county taxes of $269.30.

On July 6, 1948, the State Department of Revenue filed a claim for taxes due the State in the sum of $976.03, of which

| | |
|---|---|
| Income tax, year ending October 31, 1947 | $ 37.19 |
| Sales Tax, etc., from Sept. 1, 1947 to Jan. 31, 1948 | 825.94($741.71) |
| Sales Tax, etc., from Feb. 1, 1948 to May 30, 1948 | 82.05 |
| Franchise Tax and Permit Fee for 1948 | 30.85 |
| Total | $976.03. |

Attached were exhibits showing the items of each claim. Each such itemized verified statement was filed in the office of the probate judge on May 19, 1948, claiming a lien under Title 51, section 883, Code, upon property and rights to property, real and personal, belonging to said taxpayer.

For that part of the sales tax extending from September 1, 1947 to January 31, 1948, a final assessment had been made on March 29, 1948, in the sum of $741.71. For this amount the State Department of Revenue did on May 31, 1948 issue an execution for the collection of said sum and placed it in the possession of the sheriff of the county and it was in his possession when the instant petition was filed and levied on the property of the corporation.

On July 7, 1948, the United States filed a claim for income taxes for 1948 in the sum of $254.22 and interest from March 10, 1948. An assessment for the same was made. It was certified by the Commissioner of Revenue March 15, 1948, and assessment list dated February 1948.

A statement of said claim in said amount and claiming to be a lien in favor of the United States on all property and rights to property belonging to the taxpayer was filed in the office of the Judge of Probate of Limestone County. The date of such filing was May 21, 1948.

There was also a claim filed by the United States in the sum of $951.13, made up of the following items: withholding tax third quarter, 1947, $231.40; withholding tax fourth quarter, 1947, $412.30; withholding tax first quarter, 1948, $307.43, claiming that the same was a lien in favor of the United States upon all property and rights to property belonging to the taxpayer. The claim was dated May 19, 1948, and filed for record on May 21, 1948.

This certificate of lien filed in the probate office on behalf of the United States does not purport to cover the entire claim of the United States, which was filed in court. The entire claim filed by the United States was in the sum of $1,250.30, which included certain items of withholding tax to 1948 and the employment taxes for 1947-1948.

On August 6, 1948, the United States filed an additional claim of $526.73 for employment F.U.T.A. tax. The assessment list covering this item bears date of July 28, 1948, for which there was filed in the probate office no notice of lien.

On August 9, 1948, Fred Hagan filed a claim alleged to be secured by a mortgage to one Cecil Gardner and by him transferred to the City National Bank of Sylacauga, and by it to the said Fred Hagan, in the total sum of $3,797.50.

The City of Athens filed a claim in the sum of $76.50 claiming a State improvement lien in said sum as a preferred claim.

On August 9, 1948, the receiver filed a petition for authority to pay both of said claims as preferred claims and on that date it was ordered and decreed by the court that the receiver pay the amount of said claims. That order together with all the others, which had been previously made, was without notice to any of the other claimants.

On August 17, 1948, the receiver filed in court a statement of the funds which he had received and which had been dis-

bursed, including a preferred claim of Remington-Rand of $347.88, which was not mentioned above, showing a total payment of $12,001.78, and declaring they were all secured by mortgages, vendors' liens and assessments. He then reported certain items due employees and then the claim for taxes and unsecured creditors showing a total of $27,842.36, including what had been paid, and showing that he had received a total sum of $16,211.79, that he had paid out the total sum of $12,043.53, leaving a balance to be distributed of $4,168.26. He then prayed that the court fix a date to hear the claims of the State of Alabama and the United States for taxes and the various claims for unpaid wages. The court set a date to hear said claims and upon the hearing proof was made, as indicated above, in respect to the claims of the United States and the State of Alabama. On September 7, 1948, the court rendered a final decree, after hearing the evidence in respect to those claims, finding that the receiver had in his possession the sum of $4169.41. The court then proceeded to direct the manner of its distribution, including five percent as receiver's fee, court costs and the payment of $269.30 to the State of Alabama for its ad valorem tax, and directed the payment of other items of costs and attorneys' fees, and out of the balance directed the payment of $2,050.45 to the Collector of Internal Revenue in payment of the claim of the United States, leaving a balance of $118.43, which was directed to be paid to the State Department of Revenue as a credit on its claim for sales tax filed in this cause.

From that decree, the State of Alabama took an appeal on September 25, 1948, not only from that decree but also from all other decrees prior to said date of September 7, 1948 made in this cause. The State alone has assigned errors. Notice of the appeal was given to the various other creditors who filed their claims, but none of them have appeared or assigned errors.

The primary question of importance is whether or not the United States is entitled to priority of payment over the State of Alabama as to the amount of taxes due them each, respectively.

Before reaching that question, it is well to observe that no question is here presented as to the orders of court in making distribution of the funds received by the receiver prior to the final decree of September 7, 1948. We have held that an order of a court of equity administering a trust estate, directing the payment of certain claims ascertained by the court to be due and payable, is a final decree from which an appeal will lie to the Supreme Court. Carter v. Mitchell, 225 Ala. 287, 142 So. 514. It was also held in that case that when an appeal is taken from a final decree in a court of equity administering a trust, the appellant could not assign errors in respect to a final decree which had previously been rendered in the cause more than six months prior to the date of appeal.

In this case the appellant has assigned as error the several orders of the court in respect to the distribution of the funds received by the receiver due the mortgagee and lien holders, adjudged by the court to have priority over other claims. Those orders appear to have been made within six months prior to the time when the instant appeal was taken and, therefore, are subject to the assignments of error. But there is nothing upon which to predicate a reversal in respect to such orders. It is true those orders were made without the petition for them being set down for hearing and without reciting notice and without proof being made, other than the sworn statement of the claim. There was no objection made to the claim and, therefore, there is no error on the face of the record in respect to their allowance.

The proper remedy to test such an order would be to file a motion in court to set it aside and allow objections to be filed. The rulings on such motion, if adverse, would be subject to review in an appropriate manner. Ex parte Robinson, 244 Ala. 313, 13 So.2d 402; Stansell v. Tharp, 245 Ala. 270, 16 So.2d 857; West v. State, 233 Ala. 588, 173 So. 46. In the absence of such a proceeding and having before us only the petition of the receiver for the allowance of the payment of the claim and the verified claim itself, we cannot say that the record shows reversible

error on the part of the court in allowing the same.

There is no statutory provision requiring notice of such a petition and no other specific requirements of law relative to that situation.

So that we come to the main controversy in the case, and that is whether or not the United States was entitled to be paid its claim in full out of the free monies in court in priority to the claim of the State?

The United States bases its claim of priority upon section 3466 of the Revised Statutes of the United States, 31 U.S.C.A. § 191. In substantially its present form it has been the law of the United States since a very early period of its history. The substance of it is, that whenever any person is indebted to the United States (that includes taxes) and such person is insolvent, the debts due to the United States shall be first satisfied where the debtor has not sufficient property to pay all his debts and when he has made a voluntary assignment thereof, or 2 (not here important), or 3, when he has committed an act of bankruptcy.

The United States claims, with respect to that statute that, although this corporation being dissolved did not make a technical voluntary assignment of its property, but such was the legal effect of the act of the stockholders in seeking a dissolution and receivership, with the allegation that the corporation is insolvent; and the United States further claims that the corporation being insolvent has committed an act of bankruptcy by reason of the appointment of a receiver in a court of equity to administer and settle its affairs.

The case of United States v. Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638, made an interpretation of this statute. To analyze that decision briefly, it held, first, that section 3466, supra, applies only to an insolvent debtor, as defined by the bankruptcy law, who has made a general assignment, or when an act of bankruptcy has been committed. That the claim of the United States to priority rests exclusively on this statute, that it creates no lien in favor of the United States and does not

overreach or supersede any bona fide transfer of the property in the ordinary course, and that its priority cannot be impaired or superseded by state law and that such priority becomes effective, if at all, immediately upon the happening of the contingency specified in the Act.

But the opinion does not refer to the question of priority in respect to the liens claimed by the State or any of its subordinates. It was held that section 3466, supra, did not apply because in that case the commissioner of banks for the state of Oklahoma took over the affairs of the bank and it was not established that the bank was insolvent according to the definition of insolvency in the bankrupt law. Insolvency is defined in that law, in short, to be that the aggregate of the debtor's property is not at a fair valuation sufficient to pay his debts.

▮ We notice that this definition is substantially that which we have given insolvency within the meaning of section 106, Title 10, Code, Alabama Central R.R. v. Stokes, 157 Ala. 202, 47 So. 336; Cassells Mills v. First National Bank, 187 Ala. 325, 65 So. 820, under which this proceeding of dissolution was instituted.

So that in the instant case, we have a situation where the debtor is insolvent within the meaning of the National Bankruptcy Law and while so insolvent committed an act of bankruptcy.

We have no difficulty therefore in determining the applicability of section 3466, supra, to the instant situation and the question is, therefore, whether under its provisions the debt due to the United States, involved in the instant claim, has priority over the tax claims of the State of Alabama.

The United States Supreme Court has held in a series of decisions that section 3466, supra, should not give the United States priority over the claims of persons "who have a specific and perfected lien" on such property by *mortgage or contract or by operation of law*. The court has never said in direct terms that although the state may have a specific and perfected lien for its taxes, it shall have priority over

the United States, notwithstanding section 3466, supra. It has consistently left undecided that question. There have been several cases before that court in recent years in which it stated that a decision of that question is reserved, and that it was unnecessary in those cases to make a decision because of the fact that the claims set up by the states, respectively, were not of the class which could be defined as having a specific and perfected lien. That court in the various decisions analyzed the situation in them to determine whether or not the state had a specific and perfected lien and laid down a formula or standard by which that inquiry may be solved.

We take the opinions to mean that if it is found that according to that formula or standard the state does have a specific and perfected lien, the priority given to the United States by section 3466, supra, does not apply to such a lien, although that is not stated in terms.

It becomes necessary, therefore, for us to anaylze those cases of the United States Supreme Court to get out of them the formula by which to determine whether or not the State in the instant case has proven that it has specific and perfected lien in existence at the crucial time involved in the situation here. That crucial time was the occasion when upon the petition of all the stockholders of the corporation, the court adjudged and decreed that the corporation was insolvent and appointed a receiver for the administration and distribution of its assets on June 4, 1948.

In the case of Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621, the court held that the United States has the power by Act of Congress in order to collect its taxes and revenues, to confer priority over those due the state. Its priority does not rest upon any sovereign prerogative, but that the priority statute, section 3466, supra was enacted to advance the same policy. So that such priority is controlled by the acts of Congress. The right depends upon the status when the receiver was appointed, which was (in that case) August 28, 1922. The taxes due the United States were assessed February and May 1923. No assessment was made on the property in the hands of the receiver by the county before September 1924. This consisted of money, the proceeds of the sale of property. The county had assessed the property before the receiver was appointed. The question was what was the effect of the county's claim against the fund in respect to the claim of the United States. There was a state law that the amount of the tax is a personal obligation of the person who owned the property at the time of the assessment, and the tax is to be collected from the property if it continues in the hands of such person, and "if that property does not exist in such hands, the amount of the tax may be collected as a lien upon all the real and personal property of the person assessed and may be collected from other personal or real property of such person by seizure, distraint or other specific proceedings." It was therefore held that the county lien could not interfere with the priority of the United States for there was no distraint or other necessary proceedings, and that the lien was inchoate until that was done.

In People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, the power of Congress to enact priority statutes over state statutes is again affirmed. Referring to the case of Spokane County v. United States, supra, it was observed that in it the tax was not perfected upon the property of the insolvent at the date of the receivership. But had it been, its effect was reserved in respect to the priority of the claim of the United States. Referring to the situation in New York it is stated that the franchise tax of New York was unquestionably a lien, but not so perfected or specific as to have priority over the United States under section 3466, supra. That law provided that "each such tax * * * shall be a lien and binding upon the real and personal property of the corporation * * * liable to pay the same, until the same is paid in full." Tax Law, McK.Consol.Laws, c. 60, § 197. Such lien is effective for many purposes "though its amount is undetermined," presumably referring to the date of the receivership. But that because it is a warning to mortgagees and purchasers is far

from holding that while the liability is unliquidated and unknown, the lien is "perfected and specific." The assessment for the franchise tax was not made or liquidated until after the receivership.

In the case of United States v. State of Texas, 314 U.S. 480, 62 S.Ct. 350, 353, 86 L.Ed. 356, the question was whether the United States had priority under section 3466, supra, over a state claim for taxes. Both claims were for gasoline taxes. The Texas statute made gasoline taxes due the state "a preferred lien, first and prior to * * * all other existing liens, upon all of the property of any distributor, devoted to or used in his business as a distributor." Vernon's Ann.Civ.St. art. 7065a—7. The state claimed a lien prior to the United States under that statute. It again reserved decision of the question had such lien been specific or perfected, but held that it was not of that class because the state had made no move to assert the lien under the statute when the receiver was appointed and could not later affect a status then existing. It was said that the property "devoted to or used in his business as a distributor" is neither specific nor constant, and more important that the claim is unliquidated and uncertain, for the amount of the tax was left to the determination of the court though the tax reports made by the commission were "prima facie evidence of the contents thereof." Therefore, it showed that some procedure was essential and resort to the courts contemplated. It was said, therefore, that it was nothing more than an inchoate or general lien. It could not become specific until the exact amount had been determined and served merely as a "caveat of a more perfect lien to come."

In the case of United States v. Waddill, Holland & Flinn, 323 U.S. 353, 65 S.Ct. 304, 305, 89 L.Ed. 294, there was a general assignment where the debtor owed a landlord who had a lien and owed a city for taxes. It was held that the statute subordinates the claim of both the landlord and the city to that of the United States for certain unpaid federal unemployment compensation taxes and a debt arising out of a Federal Housing Administration transaction. It was said that the words of section 3466, supra, are broad and sweeping and, on their face, admit of no exception to the priority of the claims of the United States, citing United States v. State of Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356, but that the Supreme Court of the United States had in the past "recognized that certain exceptions could be read into the statute. The question has not been expressly decided, however, as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency." The question was not decided because the court did not think the asserted liens of the landlord and the municipality were specific and perfected on the date of the voluntary assignment. It then proceeded to analyze the Virginia law applicable to landlords in support of that belief, and held that it was not specific and perfected. (We have no question as to landlords.) it also held that the lien of the city was in no better position. It was claimed that the lien of the city attached by operation of law January 1, 1941 (the general assignment was made June 19, 1941) on an assessment of specific items of property as of that date. It was further claimed that this lien attached before the claim of the United States was acquired and hence had priority. It was pointed out that the city under the Virginia law had a lien on personal property which enables the city to follow it wherever it may be taken only if the assessment is specifically made on such property, and that the lien was only "so long as they (the personal property) remained on the premises where the owner's business was conducted." So that "if this property unit were separated or removed from the premises different results would follow. (and) Unless and until distraint was levied, which in this (that) case occurred thirteen days after the voluntary assignment, it was uncertain whether the furniture and equipment would remain intact as a unit on the premises and hence be subject to the tax lien."

In the case of People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 347, 91 L.Ed. 348, the Supreme Court of the United States seems

to have made its latest declaration in connection with this situation. In that case the state of Illinois was claiming a tax lien under the law which created such lien "upon all the personal property or rights thereto owned or thereafter acquired by an employer and used by him in connection with his trade, occupation, profession or business." Smith-Hurd Stats. Ill. c. 48, § 243 (a). The question was whether or not the lien was upon specific property, the court observing that it must attach to specific property. The Illinois law did not require the claimant in a suit to enforce the lien to specify the property sought to be condemned, but required the employer to file a complete schedule under oath of all of such property and what was used by him in connection with his trade, occupation, profession or business. It was observed that under that law it was not until the employer had filed such schedule did the state know the specific property to which the lien attached, since it only attached to that part of the property which was used "in connection with his trade, occupation, profession or business." The state had filed for record notices of the tax liens and claimed that such filing specified and perfected the property upon which the lien attached. The court observed that it had never been sufficient to show merely a general lien effective to protect the lien against the others and the state when the latter was contingent upon taking subsequent steps, either for giving notice of the lien or for enforcing it; that "The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection. Under the decisions the test is not, and cannot be, simply whether by his taking further steps, the lienor's rights will be enforced against others than the Government." The court further held there were three essentials which were crucial to determine whether the lien was specific and perfected, and these are: "(1) the identity of the lienor, * * * (2) the amount of the lien, * * * and (3) the property to which it attaches * * *. It

is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity." It was held that the lien was not specific as to the property at the crucial time because it had not been definitely ascertained what property of the debtor was devoted to and used in his business and such property had not severed itself from the general and free assets of the owner, from which the claims of the United States were entitled to priority. The court did not consider that section 3672 of Title 26 U.S.C.A., was material to this particular inquiry, and such is obvious. The purpose of that Act is to give notice of the Government's lien so that the classes of persons there specified may be protected against such liens.

The priority given by section 3466, supra, is not a lien and does not result from a lien, but is a partial enactment of the prerogative right of the Crown for the benefit of our Federal Government. Our Government does not inherit such prerogative right, 167 A.L.R. 640; North Carolina Corp. Comm. v. Citizens' Bank & Trust Co., 193 N.C. 513, 137 S.E. 587, 51 A.L.R. 1355; 32 Corpus Juris 890; 44 C.J.S., Insolvency, § 14; 14 R.C.L. 662, 663, but our states do, City Board of Education of Athens v. Williams, 231 Ala. 137, 163 So. 802; State v. Williams, 236 Ala. 272, 181 So. 792), and therefore such right which the Government has is dependent solely upon acts of Congress, whereas the states possess the Crown's prerogative right as the same may be modified by its legislative enactments. Montgomery v. State, 228 Ala. 296, 153 So. 394; Williams v. Pickens County, 230 Ala. 395, 161 So. 507.

We take it that the provisions of our statute, section 883, Title 51, of the Code of Alabama, authorizing the filing in the probate office of tax liens has no effect whatsoever to depreciate in any respect the priority of payment which the Federal Government has under section 3466, supra. Our statute could not have that effect if it was so expressed in clear terms, but such is not its meaning and we cannot accord to section 3672, Title 26 U.S.C.A., any meaning which would have the effect of sub-

ordinating the priority accorded it by section 3466, supra. Any state decision which would seem to have that effect cannot be reconciled with the decisions of the Supreme Court of the United States. Those decisions of the United States Supreme Court make the priority of section 3466, supra, apply over a lien of a state for taxes due it unless such lien has become specific and perfected as defined by those decisions at or prior to the crucial date involved. Here it is the date of the appointment of the receiver.

■ The status of the claims of the State and United States on June 4, 1948, is the controlling factor. That was when the receiver was appointed. It is not a question of whether on that date the United States had a lien of superior standing to the lien of the State. When such a controversy exists, it is not controlling that such State liens are in existence, which are merely inchoate. The court could enforce them as of their creation, though not then perfected and specific, but not if to do so conflicts with section 3466, supra. In the controversy before us, we will act on the assumption that if on June 4, 1948, the State had a lien for taxes due it on the property that went into the hands of the receiver, and that such lien was specific and perfected, we should hold that it took priority over the claim of the United States upon the free funds in the receivership, which arose from a sale of the property on which such lien existed at that time. While the United States Supreme Court has not made such a direct ruling it has not held otherwise when to do so would greatly simplify questions such as we are now dealing with. We feel justified therefore in acting on the assumption that it would hold that the priority set up in section 3466, supra, would not supersede a lien which was specific and perfected at the time when the receiver was appointed.

■ And we think, as applied to a state's claim of a lien for taxes, such lien is specific and perfected, if the amount of it has been fixed by a proceeding which is binding and conclusive at the date of receivership, and not open for change in any sort of proceeding which might arise there-

after; and that the lien upon the property which was received by the receiver was not dependent upon any contingency, nor subject to selection, shift or change, and nothing remained to be done then or thereafter to make such lien complete, specific or perfect, or to liquidate the debt, and nothing could be done thereafter to discharge the debt or subordinate such lien but full payment of the debt. It is our view that in all the cases of the United States Supreme Court on the subject, there was a status which exempted the lien from the elements which we have stated immediately above. And that if there is in our case nothing which has that effect we are justified in giving it priority, notwithstanding section 3466, supra.

As we have heretofore stated, the State and county ad valorem taxes were admitted to have priority, and have been paid by order of the court.

### Income Tax Claim—$36.22.

■■ The first item of tax claimed by the State was for $36.22 (interest to be added), income tax under State law for fiscal year ended October 31, 1947. This claim arose under sections 373 et seq., Title 51, Code of Alabama. A statement of which was filed in the probate office May 19, 1948, under section 883, Title 51, Code. Of course its filing in the probate office serves no other purpose than as notice to the classes of persons there stated. Section 883, supra, is applicable to any tax debt due the State, other than for ad valorem taxes, and creates a lien in favor of the State for the amount thereof including interest, penalty, additional amount, or addition to such tax and costs, upon all property, rights to property, real or personal, belonging to such person, (a) "unless another date is specifically fixed by law, the lien shall arise at the time the assessment list, return therefor, or the payment thereof, as the case may be, was due to have been filed with or made to the department of revenue or other agency of the state or county, and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of the lapse of time. (b) Such lien shall not be valid against any mortgagees,

purchaser or judgment creditor until after the time a notice thereof has been filed by the department of revenue, or other agency of the state, or county in the office of the judge of probate of the county in which such property real or personal is located." It then makes provision for filing a certificate as to the amount, the names of the persons against whose property the lien for such tax is claimed and the date thereof. It will be observed at once that this statute does not affect the priority rights of the United States under section 3466, supra, and it could not do so if it so provided.

Section 3670, Title 26 U.S.C.A., section 3186, Revised Statutes, creates a lien in favor of the United States similar to our section 883, supra, and by section 3672, supra, it is subject to be filed by the collector in accordance with State law, Alabama Code section 883, supra, in order to be valid as against any mortgagee, pledgee, purchaser or judgment creditor. Of course that means such designated person who has reached such status after the lien of the United States comes into being and before it is filed for record in the probate office.

 A compliance with this statute by this State in respect to the income tax claim does not serve to make such lien either specific or perfected, if it is not otherwise so. Section 407, Title 51, Code, directs the manner of making the assessment upon hearing and provides for an appeal, as provided in section 140, Title 51. Such assessment has judicial qualities. Birmingham Vending Co. v. State, 251 Ala. 584, 38 So.2d 876. A judgment on appeal under section 140, supra, is as final as any other judgment. An assessment from which no appeal is taken is likewise conclusive when the procedure provided in section 407, Title 51, is complied with. If no such procedure as there provided is pursued, the amount shown by the taxpayer's return is *prima facie* the correct amount of his tax liability. If nothing further is done as to his return, such amount remains *prima facie* correct. In that event, it has not become a fixed liability until it shall be assessed, which must be done, if at all, within two years. Section 412, Title 51, Code. The amount of tax so imposed shall be paid on the 15th day of the third month following the close of the

fiscal year (subject to future installment payments). This taxpayer was on a fiscal year basis, as of October 31st. The record in this case does not show that there was any assessment made of this income tax as provided in section 407, supra, but the return of the taxpayer was only *prima facie* the correct amount of his liability. And any payment of same was subject to a refund within two years if erroneous. Section 410, Title 51, Code; Curry v. Johnston, 242 Ala. 319, 6 So.2d 397. The amount of the debt secured by the lien was not effectually fixed and, therefore, the lien was not specific and perfected.

### Sales Tax Claim of $741.71.

As to this claim the State introduced a certified copy of a final assessment made for this tax dated March 29, 1948, showing that notice of the preliminary assessment was given the taxpayer fixing a day to hear any cause why it should not be made final; and that on the day set the taxpayer failed to appear and made no protest and, upon finding it to be correct, the same was made final in the sum of $741.71, as authorized by section 767, Title 51, Code. And on May 31, 1948, the department issued an execution for its collection and placed it in the hands of the sheriff. Section 770, Title 51, Code. A certificate covering this claim was filed in the probate office on February 25, 1948. No appeal was taken as authorized by sections 768 and 140, Title 51, Code. See, State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342. So that the final assessment made on March 29, 1948, became fixed and conclusive as to the exact amount of such liability.

 The final assessment not appealed from is as conclusive as the judgment of an ordinary court. It is the judgment of a tribunal constituted a court by the legislature as authorized by section 139 of the Constitution, and is conclusive as such. Being rendered on March 29, 1948, and no appeal having been taken in thirty days, section 140, supra, no attack can be made upon it except such as applies to an ordinary court judgment. It therefore conclusively fixed the amount of the tax claim as of March 29, 1948. State ex rel. Carmichael

v. Jones, 252 Ala. 479, 41 So.2d 280 (10, 11).

Section 883, Title 51, Code, provides for a lien for its payment, when such payment is not made, to cover all property and rights to property real or personal belonging to such person. There is no selection to be made. There is no contingency in connection with it. It is simply all of it. That means *all*, not a *portion* to be selected or identified by some formula. And that was the status on June 4, 1948, when the receiver was appointed. If a tax lien can be specific and perfected as of that date, this was of that class. If such a tax lien can take priority over the claim of the United States under section 3466, supra, this does so. We take the liberty, therefore, of so declaring, subject to be corrected in either respect by the United States Supreme Court. Until that court makes a ruling, we must exercise our own judgment when necessary to a decision of the case.

*Sales Tax for $82.05 from February 1, 1948, to May 30, 1948.*

There does not appear to be an assessment for this amount. There is an affidavit by the chief accountant that such amount is correct, due and unpaid. Such proof is not sufficient to fix a lien specific and perfected.

*Franchise Tax and Permit Fee—$30.85.*

There is no evidence of this claim except the affidavit of the record clerk of the Franchise Tax Division of the Department of Revenue, that such amount is correct, due and unpaid after allowing all credits. It is therefore in the same status as the sales tax claim of $82.05, supra, and does not take priority over the debt due the United States.

For the error in not giving priority to the State's sales tax claim of $741.71, the decree of the trial court is reversed and the cause is remanded to that court with direction to give effect to this opinion in making distribution of the fund in the hands of the receiver.

Reversed and remanded with directions.

LAWSON, SIMPSON and STAKELY, JJ., concur.