LILLIE EVANS, plaintiff, v. KENNIE STEWART dba KENNIE'S CAFE, defendant; H. A. GAARDE, intervenor-appellee.

No. 48546.

(Reported in 66 N.W.2d 442)

1270

OCTOBER 19, 1954.

F. E. Van Alstine, United States Attorney, Richard W. Beebe, Assistant United States Attorney, of Sioux City, and Philip C. Lovrien, of Humboldt, for United States, claimant-appellant.

Daniel D. Sanderson, of Estherville, for claimants-appellees.

Leo E. Fitzgibbons, of Estherville, for receiver-appellee.

Wm. O. Anderson, of Estherville, for intervenor-appellee.

MULRONEY, J.—On July 25, 1949, H. A. Gaarde leased a building in Estherville to Kenneth Stewart for a term of two years commencing August 1, 1949. The written lease provided for a rental of $90 a month and it further provided for a lien to secure the rent by "an absolute lien upon all of the property of any kind brought or kept upon said premises by party of the second part." The lease was recorded on July 26, 1949, in the Emmet County Recorder's office and Stewart entered into possession and conducted a restaurant on the premises called Kennie's Cafe.

On January 31, 1951, and March 2, 1951, there were filed in the Emmet County Recorder's office notices of tax liens under Federal Internal Revenue Laws for withholding taxes due from

Stewart which with penalty and interest amounted to $1490.92. These liens were based on assessments received by the collector on October 31, 1950, and February 16, 1951.

On April 24, 1951, action was started against Stewart on an unpaid labor claim which resulted in a finding that Stewart was insolvent and in the appointment of a receiver (under chapter 680, Code, 1954) to take charge of the restaurant property owned by Stewart. The receiver qualified and took over the property on April 26, 1951, and, pursuant to order of court, and consent of parties, the property was sold for $1700; the court reserving all questions as to priority among claimants.

There were further proceedings where it was established that the amount due under the lease at the time the receiver took over the property and up to the expiration of the two-year term (July 31, 1951) was $891.51. It was also established that the Emmet County personal property taxes due from Stewart d/b/a Kennie's Cafe was $76.33 for the year 1949 and $165.09 for the year 1950 or a total of $241.42. The personal property tax for the year 1951 had not been determined at the time the receiver took over. It was also established that the Collector of Internal Revenue had a valid claim for Social Security tax due from Stewart in the sum of $459.54 but no notice of this claim was ever filed or recorded in the Emmet County Recorder's office. There were other claims but, for the purpose of this appeal, they are not important.

The trial court ruled the receiver, after paying receivership expenses, should pay claims in the following order:

1. The claim of Emmet County for personal property tax in the sum of $241.42.

2. The claim of the landlord, Gaarde, in the sum of $891.51.

3. The claim of the Collector of Internal Revenue for withholding taxes in the sum of $1490.

4. The claim of the Collector of Internal Revenue for Social Security tax in the sum of $459.54.

The United States appeals, arguing its claims for withholding and Social Security taxes are entitled to priority over the claim for personal property taxes and the landlord's claim.

I. Section 680.7, Code, 1954, provides that the order of payment in such a receivership as is here involved shall be:

"1. Taxes or other debts entitled to preference under the laws of the United States.

"2. Debts due or taxes assessed and levied for the benefit of the state, county, or other municipal corporation in this state.

"3. * * *."

The United States relies on section 3466 of the United States Revised Statutes, 31 U. S. C. A., section 191, which provides in part: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; * * *."

The Federal Government did have a general lien for its withholding tax at the date of the receivership by virtue of section 3670 of Title 26, U. S. C. A., which provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The next section, or 3671, provides in part: "* * * the lien shall arise at the time the assessment list was received by the collector" and section 3672, as amended in 1942, provides in part the "lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * * in the office in which the filing of such notice is authorized by the law of the State * * * in which the property subject to the lien is situated * * *."

■ We do not understand the Government to claim anything for its status as the holder of a lien, before receivership, in so far as it asserts priority over the county's lien for taxes. The priority in favor of the Government's indebtedness under 3466, supra, exists "whether secured by liens or otherwise." United States v. City of New Britain, Conn., 347 U. S. 81, 74 S. Ct. 367, 98 L. Ed. 520. No argument is made here, with respect to the county's claim, that the Government's filed lien would be superior to the county's lien, even if the latter be deemed specific, because the county's lien is not within the ex-

clusions of 3672, supra. But see United States v. Security Trust and Savings Bank, 340 U. S. 47, 71 S. Ct. 111, 95 L. Ed. 53. Without admitting a specific and perfected lien would displace the Government priority under section 3466, supra, the Government argues the county's tax lien is not a perfected and specific lien. The Supreme Court of the United States has never held the priority under 3466, supra, would be subordinate to a perfected and specific lien. United States v. Waddill, Holland & Flinn, 323 U. S. 353, 65 S. Ct. 304, 89 L. Ed. 294; People ex rel. Gordon v. United States, 328 U. S. 8, 66 S. Ct. 841, 90 L. Ed. 1049; Illinois ex rel. Gordon v. Campbell, 329 U. S. 362, 67 S. Ct. 340, 91 L. Ed. 348, even when the Government had acquired a lien under 3670 and 3672, supra. United States v. Gilbert Associates, Inc., 345 U. S. 361, 73 S. Ct. 701, 97 L. Ed. 1071, 1072. In the above opinions and in many more that could be cited the Supreme Court has reserved ruling on the question. See notes, 77 L. Ed. 757, 83 L. Ed. 1229, 97 L. Ed. 32.

The fact that the United States Supreme Court has so often decided such controversies by resolving debatable questions of specificity and perfection of the lien, when the decision would be simplified by holding the federal priority superseded a lien, leads one to believe that, when the question is squarely presented, the decision will not result in a subordination of the lien to the priority.

We feel justified in acting on the assumption that if the county had a lien for taxes due it on the property that went into the hands of the receiver and such lien was specific and perfected then the county's claim is prior to the claim of the United States.

II. The minimum requirements of specificity and perfection which a lien must possess before it will override the federal priority were stated in our recent opinion In re Estate of Lane, 244 Iowa 1076, 59 N.W:2d 593. The opinion holds that under the cited authorities the law requires that the lien be definite and not merely ascertainable in the future by taking some further steps in at least three respects as of the crucial time (in this case the taking over by the receiver). These are: (1) The identity of the lienor; (2) the amount of the lien; (3) the property to which it attaches.

III. The county's claim for $241.42 for personal tax was a lien against the restaurant property that came into the hands of the receiver. At least the Government does not argue it was not, and section 445.31, Code, 1954, provides:

"Taxes upon stocks of goods or merchandise, fixtures and furniture in * * * restaurants * * * shall be a lien thereon and shall continue a lien thereon when sold in bulk, and may be collected from the owner, purchaser, or vendee, and such owner, purchaser, or vendee of any of such goods, merchandise, furniture, or fixtures shall be personally liable for all taxes thereon."

The lien created by the above statute is a first lien, superior to a mortgage or other contract lien. Linn County v. Steele, 223 Iowa 864, 273 N.W. 920, 110 A. L. R. 1492; Cummings v. Hunt, 244 Iowa 72, 56 N.W.2d 8. Of a similar tax lien covering stocks of goods and merchandise (section 420.233, Code, 1954) we said in Larson v. Hamilton County, 123 Iowa 485, 487, 99 N.W. 133, 134:

"The taxes are against the property as such as well as against the owner. A sale in bulk does not avoid the tax. If the stock continues such, the lien attaches in whosesoever hands the stock may be found. It may not attach until the levy, and this is doubtless true with respect to real estate. But the lien is as inevitable as against real estate * * *."

The question with respect to the county's lien is whether it meets the test of perfection and specificity. It certainly meets the test of identity. The lienor is the county. It meets the test of amount. The amount of the tax lien on the property the day the receiver took over was fixed and conclusive. The amount was not subject to review or change and the only way the lien could be discharged was by full payment of the amount of the tax.

The only argument advanced in the brief of the United States against the perfection and specificity of the county's lien seems to be that the third test, the property to which it attaches, is not specific, for the restaurant property had never been reduced to the county's possession prior to the date the

receiver took over, citing United States v. Gilbert Associates, Inc., supra, and United States v. Texas, 314 U. S. 480, 62 S. Ct. 350, 86 L. Ed. 356. There is a line of cases, of which the Gilbert case is an example, where the tax lien is general—against all of the property or all of the personal property, or all of the real property of the debtor—where the Supreme Court has held specificity as to the property to which the lien attaches requires the lienor must have dispossessed the debtor before the receiver took over. We followed these authorities and cited the Gilbert case in our recent opinion in In re Estate of Lane, 244 Iowa 1076, 59 N.W.2d 593. In the Lane case the State's claim was made a lien "on any real estate owned either by the husband or wife."

In United States v. Texas, supra, it was argued the Texas statute made the gasoline tax a lien against the property of the insolvent distributor which is " 'devoted to or used in his business as a distributor.' " The court held this was not specific, presumably, as said in State v. Woodroof, 253 Ala. 620, 629, 46 So.2d 553, 560, "because it had not been definitely ascertained what property of the debtor was devoted to and used in his business." However, it is clear that the Supreme Court in United States v. Texas, supra, considered the Texas lien was not specific because the amount of the claim was not certain. The opinion states at page 487 of 314 U. S.: "But a more important consideration [than the property to which the lien attached] is that the amount of the claim secured by the lien is unliquidated and uncertain."

The opinion reviews other Texas statutes providing for reports and audits, and court review, to determine the correct amount of the tax default, and states: "Thus, it was clearly envisaged that the amount of the taxes due, for which the lien was security, should be left to determination by the courts."

The opinion goes on to review other Texas statutes regulating suits to collect the tax and concludes the Texas statute did create a lien in favor of the state but "it was nothing more than an inchoate and general lien. * * * It could not become specific until the exact amount of the taxes due had been determined, and it could not be enforced without the assistance

of the courts. Like the tax lien in New York v. Maclay [288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754], it served 'merely as a caveat of a more perfect lien to come.' "

What was said of the tax liens involved in the Gilbert and Texas opinions cannot be said of the tax lien involved here. It was definite as to amount and we do not understand the United States to argue otherwise. It would only be indefinite as to the property to which it attached if specificity requires the liened property be reduced to the possession of the lien-holder before the receiver took the property. We find no such requirement in the decisions of the Supreme Court where the tax statute does not create a general lien. Indeed the plain implication of the Texas opinion is that the lien would have been specific as to property if the statute had, by its own force, severed the liened property from other assets of the debtor. In the case before us the statute does just that. It attaches the lien to the stock of goods, merchandise, fixtures, and furniture in the restaurant. It separates that property from any other property the insolvent debtor might own and establishes a lien thereon in favor of the county. On the date the receiver took over the restaurant property there was nothing more to be done to perfect the county's lien on this property. It was not a " 'caveat of a more perfect lien to come.' " It was definitely and conclusively fixed as to the property subject to the lien, and the amount of the lien.

In the case of State v. Woodroof, 253 Ala. 620, 630, 46 So.2d 553, 561, the court reviewed many of the opinions of the Supreme Court and drew this rule as to when a state court would be justified in holding its state tax superior to the United States claim: "And we think, as applied to a state's claim of a lien for taxes, such lien is specific and perfected, if the amount of it has been fixed by a proceeding which is binding and conclusive at the date of receivership, and not open for change in any sort of proceeding which might arise thereafter; and that the lien upon the property which was received by the receiver was not dependent upon any contingency, nor subject to selection, shift or change, and nothing remained to be done then or thereafter to make such lien complete, specific or perfect, or to

liquidate the debt, and nothing could be done thereafter to discharge the debt or subordinate such lien but full payment of the debt. It is our view that in all the cases of the United States Supreme Court on the subject, there was a status which exempted the lien from the elements which we have stated immediately above. And that if there is in our case nothing which has that effect we are justified in giving it priority, notwithstanding section 3466, supra."

Enforcement procedure of distress and sale had not been commenced and the debtor had not been dispossessed, but we do not understand the Supreme Court opinions require this except in cases where the lien is general. The tax lien here is not like the judgment lien discussed in United States v. Gilbert Associates, Inc., supra, where the lienor had to take further steps to reduce the judgment to a lien against specific property. The statute by its own force selected the property to be burdened with the lien.

In In re Ever Krisp Food Products Co., 307 Mich. 182, 210, 11 N.W.2d 852, 862, the same contention was made and the opinion states: "If the position taken by the United States were to be upheld, we would have the strange result that a *tax lien* on personal property would be inferior to the claim of the United States for priority of payment out of the taxed property (on the ground that the *tax* lien had not been perfected by the distraint of the taxed property), while a *mortgage* lien on personal property would be *superior* to the claim of the United States for priority of payment out of the mortgaged property, although the *mortgage* lien had *not* been perfected by seizure of the mortgaged property. Taxes are for the support of government. We see no sound reason why a mortgagee who has not yet proceeded to enforce his lien by foreclosure or seizure of the mortgaged property should be favored as against the claim of the United States for priority of payment, and at the same time a governmental subdivision (city or county) in the same situation, namely, not having 'perfected its lien' (as now asserted by counsel for the United States) by distraint, or foreclosure of its tax lien by seizure of the property, should be in a less favored position."

. The above case is particularly in point for there the lien of the state personal property taxes was against the property taxed, and, like our lien statute as to restaurant property it continued a lien when the property passed into other hands and the court held (page 196 of 307 Mich., page 856 of 11 N.W. 2d) the lien "follows the property into the receiver's hands, and attaches to the proceeds of the property. The value of the property at all times is the value less the amount of any prior specific perfected liens. The property therefore passes to the receiver burdened with the city and county liens, its value as a property reduced by the amount of those specific perfected liens."

The above case was cited with approval, and followed in United States v. O'Dell, D. C., Mich. (1945), 61 F. Supp. 966, 968, the opinion stating: "The receiver of an insolvent corporation always takes the property subject to the city, county and state liens. The matter is entirely covered in In re Ever Krisp Food Products Co., 307 Mich. 182, 11 N.W.2d 852, and need not be further enlarged upon in this opinion."

We are of the opinion that the county's lien was a perfected and specific lien against the restaurant property on the date the receiver took it over and therefore the county's claim in the sum of $241.42 was prior to the claim of the Government.

IV. The argument of the landlord is that sections 3670, 3671 and 3672, supra, are applicable and, under his recorded lease he had the status of a mortgagee, and since his lien was valid and recorded, prior to the filing of the collector's notices of tax liens, the latter are invalid as to him. The United States argues these statutes are not applicable for the debtor was insolvent and section 3466, supra, governs and if the statutes (3670–3672, supra) are applicable then the landlord was not a mortgagee, and his lien was not sufficiently specific.

There is no merit in the argument that sections 3670–3672, supra, have no application because the debtor was insolvent. Section 3466, supra, as previously pointed out, is not a lien statute. Sections 3670–3672, supra, are the statutes that create liens for federal taxes and, as the Government had a right to

do, the liens are made inferior in certain instances to the liens of other lienholders. To say this would only be true when the tax debtor would be solvent would be reading something into the statutes that is not there.

The same contention was made in In re Decker's Estate, 355 Pa. 331, 341, 49 A.2d 714, 719, and the court disposed of it in the following language: "It is urged by appellants that section 3672 of the Internal Revenue Code, 56 Stat. 957, Title 26, U. S. C. A. Int. Rev. Code, section 3672, should not be construed as overriding section 3466 of the Revised Statutes but as being limited to solvent debtors whereas section 3466 relates to insolvent debtors. It is obvious, however, that such a construction of section 3672 would be quite unreasonable, since there could be no need or reason for such legislation if intended to provide merely for relative priorities in the distribution of the assets of solvent debtors."

To the same effect see In re Meyer's Estate, 159 Pa. Super. 296, 48 A.2d 210. We do not believe a priority of lien, gained by either the Government or any other lienholder such as a mortgagee, by prior recordation under sections 3670–3672, supra, would be lost by virtue of the insolvency of the debtor.

V. There is no question but that the landlord's contract lien was filed first. There is no dispute as to the amount of the landlord's claim. He will bring himself within the provisions of section 3672, supra, and the Government's tax lien will be "invalid" as to him, if he is a mortgagee and his recorded lien is not otherwise defective.

We feel the requirement that the lienholder be a "mortgagee" is a requirement of status—that he be in the position of one holding a mortgage. We are not dealing with a lien given the landlord by statute. He had a broader contractual lien which is often spoken of as "the chattel mortgage provision" of a lease. In 14 C. J. S., Chattel Mortgages, section 8, it is said a lease with a provision reserving a lien for rent on the personal property on the premises "operates as a mortgage or is in legal effect a mortgage of such property." See also Sioux Valley State Bank v. Honnold, 85 Iowa 352, 52 N. W. 244· Reese v. Lamp, 195 Iowa 1221, 1223, 193 N.W. 536, 537.

In the Reese case we said: "There can be no doubt that the contract for lien in favor of the landlord, Lamp, was, in effect, a chattel mortgage, and created a valid and subsisting lien on the property in controversy [citations]."

The lease with the lien clause contains every requisite of a chattel mortgage. We held in Sioux Valley State Bank v. Honnold, supra, that such a lease should be recorded under the statute providing for recording of chattel mortgages. In Beh v. Tilk, 222 Iowa 729, 731, 269 N.W. 751, 752, we said: "A lease which in addition to the statutory lien makes the rent charge a lien upon the property of the tenant on the premises whether exempt from execution or not constitutes, in effect, a chattel mortgage or equitable lien [citations]."

VI. The remaining contention of the Government is that the landlord's lien, even if it be held to be a chattel mortgage, was not specific. The Government's brief contends: "The lease did not refer to specific property but to 'all of the property of any kind brought or kept upon said premises.'" Here it is of interest to inquire the nature of the Government's tax lien. It has been said it has the effect of a judgment. Citizens National Trust & Savings Bank of Los Angeles v. United States, 9' Cir., 135 F.2d 527. In Liscomb State Sav. Bk. v. Akers, 197 Iowa 706, 707, 197 N.W. 890, we said: "The law is settled in this state that the description in a chattel mortgage of the property sought to be covered thereby is sufficient if it directs the mind of the inquirer to facts or evidence from which he may ascertain or identify the mortgaged property with absolute certainty."

We feel the description as being all of the property at a certain location is sufficient. See 14 C. J. S., Chattel Mortgages, section 57c. The only argument the Government advances that the contract lien is not specific seems to be that the landlord's contract lien was no different from his statutory lien and under either the landlord had to make his lien specific by taking action to secure possession of the property before either lien would be specific. A short answer to this argument is, we are not concerned with the landlord's statutory lien. His contract lien is, we feel, a chattel mortgage and it could hardly

be contended that a chattel mortgagee would have to foreclose before he could displace the Government lien under the provisions of section 3672, making the Government lien invalid as to a mortgagee. The Government, in this portion of the controversy as to priority of liens, is the "third person" likened to the holder of a judgment secured after the chattel mortgage was recorded. The description was sufficient to put a subsequent judgment creditor on inquiry. The inquiry would have led to complete identification of the property.

The same can be said with respect to the description of the debt secured. A general description of a debt payable in monthly installments is sufficient as to third persons. 14 C. J. S., Chattel Mortgages, section 72.

We agree with the order of payment of claims as made by the trial court, and the cause is affirmed.—Affirmed.

All JUSTICES concur.