**R. F. BALL CONSTRUCTION COMPANY, Inc.**

**v.**

**Marcus M. JACOBS et al.**

**Civ. A. No. 1997.**

United States District Court
W. D. Texas, San Antonio Division.

March 29, 1956.

Josh H. Groce, Eskridge, Groce & Hebdon, San Antonio, Tex., of counsel, for United Pacific Ins. Co.

Brewer, Matthews, Nowlin & Macfarlane, San Antonio, for The Herweck Co., Inc.

Allen H. Kottwicz, Houston, Tex., for S. H. Kottwicz & Co.

Simon & Simon, by Richard U. Simon, Fort Worth, Tex., for Ball Const. Co.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Edward W. Rothe, Sp. Assts. to the Atty. Gen., Russell B. Wine, U. S. Atty., San Antonio, Tex., Harman Parrott, Asst. U. S. Atty., San Antonio, Tex., for the United States.

RICE, Chief Judge.

Pursuant to Rule 52(a), 28 U.S.C.A., this Memorandum of Decision is filed and contains findings of fact and conclusions of law in this case, the facts of which have all been stipulated by the parties.

On June 26, 1951, R. F. Ball Construction Company (hereinafter called Ball) entered into a contract with the Housing Authority of the City of San Antonio (hereinafter called Housing Authority) for the construction of a housing project. Shortly thereafter Ball subcontracted the painting and decorating involved in such contract to Marcus M. Jacobs Company, a co-partnership consisting of Marcus Jacobs and Henry Leskey (hereinafter called Jacobs) for the sum of approximately $230,000 and required of it a faithful performance bond. On July 21, 1951, Jacobs applied to United Pacific Insurance Company (hereinafter called Bonding Company) for such performance bond, and one of the considerations agreed to in the application for such bond was an unconditional assignment by Jacobs to the Bonding Company of all percentages retained by Ball under the Jacobs sub-contract as collateral security for the protection of the Bonding Company, not only for losses growing out of the Housing job, but for the "payment of any other indebtedness or liability" of Jacobs to the Bonding Company, "whether heretofore or hereafter incurred". A few months thereafter the business of Jacobs was incorporated into Marcus M. Jacobs Company, Inc. (hereinafter called Jacobs, Inc.) and the corporation succeeded to all rights and liabilities of the partnership. No party to this controversy has raised any question about the succession, so this mutation from the partnership to the corporation is immaterial and will not be referred to further. See James Miles & Son Co. v. Aetna Casualty & Surety Co., D.C., 1 F.Supp. 925; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206.

Thereafter, on April 4, 1952, Jacobs, Inc. obtained from the Bonding Company a similar bond on another sub-contract in Louisville, Kentucky, in the application for which Jacobs, Inc. agreed "to indemnify and keep indemnified the company against all loss, costs, damages, expenses and attorney's fees whatsoever * * *", and under such bond

the Bonding Company exposed itself to a liability of some $35,000.

On April 30, 1953, the Housing Authority accepted the work of Ball and subsequently it was agreed between Ball and Jacobs, Inc. that the sum of $13,228.55 representing the retained percentages according to the terms of the subcontract, was due and owing on this job by Ball to Jacobs, Inc., as of April 30, 1953.

In May, June and September of 1953, and long after the assignment as collateral security of the retained percentages on the Housing Authority job had been made to the Bonding Company, and long after the Bonding Company had executed its obligation under its bond on the Louisville job, the United States Government filed tax liens against Jacobs, Inc. totalling $17,010.85. No stipulation is made by the parties that this tax claim arose out of Jacobs, Inc.'s failure to pay taxes incurred on either the Housing Authority job or the Louisville job, so that this court must assume that they are ordinary tax liens, not growing out of the particular jobs in question, and the Government here makes no claim on either of the bonds.

After the tax liens had been filed, the potential liability on the Kentucky job incurred by the Bonding Company on April 4, 1952, became an actual liability and the Bonding Company was required to pay, by virtue of its bond in connection with the Kentucky project, the sum of $12,971.88.

■ Thereafter, because of numerous conflicting claims presented to Ball, Ball was unable to determine with safety to itself to whom the $13,228.55 of retained percentages which it held in its hands should be paid. Therefore, Ball filed this suit, which is an interpleader action, making as parties defendant Jacobs and Jacobs, Inc., the Government, the Bonding Company and certain suppliers of materials and services on the Housing Authority job, and asking for an interpleader's fee of $500, which has been stipulated to be a reasonable fee if under the law any interpleader's fee is payable. The Government filed its answer claiming the funds by virtue of its tax liens; the Bonding Company filed its answer claiming $12,971.88 of the funds by virtue of its assignment as collateral security and the loss which it sustained on the Kentucky job; the Herweck Company, Inc. filed its claim for $981.83 for materials furnished on the Housing job; S. H. Kottwicz & Company filed its claim for compensation and public liability insurance premiums on said job of $2,431.05. Several other claimants were made parties defendant but failed to answer and make claim, and default judgment was rendered against them. Kottwicz, although filing a claim, has not appeared in any of the hearings, and has failed to file any briefs herein in support of his claim; and it appearing to the court that under decisions such as United States v. Yates, Tex.Civ.App., 204 S.W.2d 399, as well as by virtue of default, Kottwicz is not entitled to recover, judgment will go against him.

■ The Herweck Company has filed its brief contending that it is entitled to priority, but has likewise stated that the Bonding Company had agreed to satisfy its claim if the Bonding Company prevailed herein, and has asked, therefore, that judgment go in favor of the Bonding Company, and in view of this Herweck likewise goes out of the case, under the court's rulings, since the court is of the opinion that the Bonding Company should prevail herein, and will respect the agreement between Herweck and the Bonding Company.

The principal question for determination by this court is as to which lien is prior—the Government's tax lien which arose by virtue of the filing of the notice of its tax liens in May, June and September of 1953, or the contract lien of the Bonding Company which arose long prior thereto by virtue of the assignment of the retained percentages in question by Jacobs to the Bonding Company, which by contract protected the Bonding Company from the loss which it incurred on the Louisville job, which

became a potential loss upon the execution of the Louisville bond on April 4, 1952, prior to the filing of the Government's tax liens, but which was not paid under its bond until after the filing of the Government's tax liens.

The Government cites and contends that the cases of United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Liverpool, etc., Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; and United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271, are in point and are controlling in this case, and says:

"* * * the principles of United States v. Security Trust & Sav. Bk.; United States v. City of New Britain; United States v. Scovil; United States v. Acri; and United States v. Liverpool & London Ins. Co., supra, must be applied."

The Bonding Company, on the other hand, contends that none of the liens in the above cited cases were contractual liens and that none of those cases dealt with mortgagees, pledgees, or purchasers within the meaning of Section 3672 of the Internal Revenue Code (now Section 6323, Title 26 U.S.C.), and further contends that in those cases the court was construing only the term "judgment creditor" and liens other than mortgages and pledges, and therefore says that such cases are not controlling in this case.

Section 3672 of the Internal Revenue Code provides in effect that filing of a federal tax lien does not affect the rights of any prior "mortgagee, pledgee, purchaser, or judgment creditor". Most of the decisions of the Supreme Court cited above and referred to by the Government dealt with inchoate judgment liens and none of those cases dealt with the contract lien of a "mortgagee", "pledgee" or "purchaser". The latter three categories are all based upon a contract right of some sort, whereas the term "judgment creditor" and the other liens dealt with in those cases, such as water, rent liens, municipal tax liens and landlord's distress liens, arose by virtue of some statutory right, not specifically referred to in Section 3672.

The Bonding Company contends that since its assignment as collateral security was based upon a contract which was prior in time to the Government's tax liens, it is either a mortgagee, pledgee or purchaser of the retained funds and it disclaims any contention on its part that it is a judgment creditor, or claims to be anything other than a mortgagee, pledgee or purchaser.

In the case of National Refining Co. v. United States, 8 Cir., 160 F.2d 951, 954, the taxpayer was indebted to National Refining Company, which took an assignment as collateral security from the taxpayer of certain commissions to be earned by him under his contract with the Government "when they should become available to him". Before any money had been earned or paid under this assignment, the Government perfected a tax lien and there claimed that the assignment as collateral security was subordinate. In holding that the assignment to the National Refining Company took priority over the Government's tax claim, the court said:

"We think it is safe to say that one who, for a valuable present consideration acquires property or an interest in property is a 'purchaser' within the meaning of 26 U.S.C.A.Int.Rev.Code, § 3672."

It cannot be doubted that the execution by the Bonding Company of the bonds in this instance constituted "a valuable present consideration" and it further cannot be doubted that at the time of the assignment as collateral security of the retained percentages by Jacobs to the Bonding Company, the Bonding Company acquired an interest in these retained percentages. However, I do not rest my decision on this ground since in the Scovil case [348 U.S. 218, 75 S.Ct.

247], the Supreme Court said: "A purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee".

In the case of Knight v. Knight, 272 App.Div. 499, 71 N.Y.S.2d 357, 358, the Government claimed that its lien for federal taxes was superior to a prior assignment of future wages as collateral security for payments to the taxpayer's divorced wife. The court there held:

"The Government attempts to avoid the impact of Section 3672 by contending that respondent is not a pledgee. We think that, as the assignment of wages made by defendant Knight was as security for and a means of payment of the defendant's principal obligation to pay plaintiff $20,000, the plaintiff comes within the classification of a pledgee."

This case was subsequently affirmed by the Court of Appeals, 297 N.Y. 945, 80 N.E.2d 344, and was not appealed by the Government to the Supreme Court of the United States.

The assignment of retained percentages in the case at bar was made by Jacobs as security for and a means of payment of Jacob's obligation to indemnify the Bonding Company against loss, and it could be said therefore, as was held in the Knight case, that the Bonding Company "comes within the classification of a pledgee."

█ In my opinion, however, the Bonding Company in this instance more nearly comes within the classification of a "mortgagee" under the Texas law, which "should be given considerable weight in determining whether or not" the Bonding Company is a mortgagee. See United States v. Cargill, 1 Cir., 218 F.2d 556, at page 560. According to 29 Tex.Jur. 786,

"A mortgage, in the broadest sense of the term, is a pledge of property, either real or personal, or of a chose in action, as security for the performance of an obligation."

According to 29 Tex.Jur. 838,

"A mortgage which purports to secure future debts is not ineffectual or invalid. On the contrary the lien created will be enforced not only in a dispute between the mortgagor and mortgagee but also in a controversy involving the rights of one who claims under the mortgagor."

As was recently stated by the Supreme Court of Iowa in Evans v. Stewart, Iowa, 66 N.W.2d 442, at page 449:

"We feel the requirement that the lienholder be a 'mortgagee' is a requirement of status—that he be in the position of one holding a mortgage".

█ It is true that the parties to the assignment as collateral security in this instance did not place a label on this transaction as either a mortgage, a pledge or a purchase, but courts do not decide cases on nomenclature; they look to the substance of the transaction; and the substance of the assignment here was to put the Bonding Company in the status of either a mortgagee, pledgee or purchaser, and therefore Section 3672 applies.

In Northern Nat. Bank v. Northern Minn. Nat. Bank, 70 N.W.2d 118, the Supreme Court of Minnesota held that an assignment as security of retained percentages under a construction contract to a bank which was prior in time to a Federal tax lien, was superior to the claim of the Government, which is precisely the situation here. The Government did not appeal that case to the Supreme Court of the United States.

The distinction between a contract lien and a statutory lien is made clear by comparing the case of Evans v. Stewart, supra, with the Scovil case, supra. In the Scovil case, the Supreme Court held that prior to the time it ripened into a final judgment, an incompleted statutory, landlord's lien was inferior to a federal tax lien, since the holder thereof was neither a "mortgagee", "pledgee", "purchaser" nor "judgment creditor".

In the Evans case, the court held that a written contract landlord's lien contained in the lease was superior to a federal tax lien because it was a "mortgage" within Sec. 3672. The Government did not appeal the Evans case.

■ The Government argues that if an attachment or other judicial lien is not sufficiently "choate" or complete "to defeat a subsequent tax lien" then a mortgage to secure future indebtedness should likewise be inferior to a subsequent tax lien. Congress has in effect stated in Section 3672 that before an attaching, or other similar statutory lienor, could claim priority over the Government, his claim had to ripen into a final judgment. United States v. Security Trust, etc., supra. United States v. Acri, supra. No such qualification was placed by Congress on the contractual lien of a "mortgagee". It is the Congress which enacts the law with reference to priorities and not the courts, and I therefore hold that the Bonding Company under its assignment as collateral security, became a "mortgagee" within the meaning of 3672 and was, therefore, not affected by the tax liens which were subsequent in time.

■ While admitting that "the Government does not claim the status of an innocent purchaser for value", the Government does contend that because the Bonding Company did not record its assignment under the provisions of Article 260–1, R.C.S. of Texas, Vernon's Ann. Civ.St., said assignment is therefore inferior to the claim of the Government. In Texas, the recording of an assignment adds nothing to the validity thereof as between the parties. (9 Tex.Jur. 97).

As I see it, the Government is seeking to read into Section 3672 provisions which Congress has not seen fit to insert therein and the Government would have this court construe such section to read:

"Such lien shall not be valid as against any mortgagee *whose mort-gage is due at a certain time and in a certain amount and which mortgage has been duly recorded in accordance with law.*"

Had Congress seen fit to make such a requirement it could have done so, but I decline to read these words into the statute, and on this point I concur in the opinion of Judge Wyche in the case of United States v. Anders Contracting Co., D.C., 111 F.Supp. 700, where the Government made identically this same contention, was overruled, and did not appeal.

■ There remains for consideration the question as to whether or not Ball is entitled to any interpleader's fee in this case. The Bonding Company has raised no objection to awarding such fee and in fact has presented cogent arguments as to why such fee should be allowed. The Government, on the other hand, contends that under the case of United States v. Liverpool, etc., supra, the interpleader is not entitled to his costs. There can be no question as to the status of Ball in this matter. Ball was an innocent stakeholder confronted with conflicting claims to a fund which was in his hands, and he adopted the proper course of employing attorneys and tendering this money into court. As was said by the Supreme Court in its opinion therein, the Liverpool case had to do solely with a garnishee's fee under Rule 677 of the Texas Rules of Civil Procedure and did not purport to deal with an Interpleader action under Texas Rule 43 or Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and it is therefore not controlling. On the other hand, the case of United States v. Ullman, D.C., 115 F.Supp. 211, is directly in point, and I adopt the reasoning of the court in that case and hold that Ball is entitled to his interpleader's fee in this case, and the remainder of the interpleaded fund, less costs, should be awarded to the Bonding Company.

The attorneys for the Bonding Company are directed to submit a judgment not inconsistent with this Memorandum.